# EXHIBIT 1

OFFICIAL FILE COPY
CLERK OF THE BOARD
OF COUNTY COMMISSIONERS
MIAMI-DADE COUNTY, FLORIDA

# MEMORANDUM

Agenda Item No. 11(A)(6)

| | | | |
|---|---|---|---|
| **TO:** | Honorable Chairman Jose "Pepe" Diaz<br>and Members, Board of County Commissioners | **DATE:** | June 2, 2021 |
| **FROM:** | Geri Bonzon-Keenan<br>County Attorney | **SUBJECT:** | Resolution approving Partial Settlement Agreement between Miami-Dade County and the plaintiffs in C.F.C., et al. v. Miami-Dade County (Case No. 1:18-CV-22956-KMW); authorizing the County Mayor to execute the Settlement Agreement and exercise all rights contained therein; approving certain policies in accordance with terms of Settlement Agreement; recognizing provisions of Resolution No. R-163-17 as superseded by state statute; and providing that Miami-Dade County shall cooperate with United States Immigration and Customs Enforcement to the extent required by law |

Resolution No. R-573-21

The accompanying resolution was prepared and placed on the agenda at the request of Prime Sponsor Commissioner Jean Monestime.

Geri Bonzon-Keenan
County Attorney

GBK/smm



# MEMORANDUM
### (Revised)

| | |
|---|---|
| **TO:** Honorable Chairman Jose "Pepe" Diaz<br>and Members, Board of County Commissioners | **DATE:** June 2, 2021 |
| **FROM:** Geri Bonzon-Keenan<br>County Attorney | **SUBJECT:** Agenda Item No. 11(A)(6) |

Please note any items checked.

_____ **"3-Day Rule" for committees applicable if raised**

_____ **6 weeks required between first reading and public hearing**

_____ **4 weeks notification to municipal officials required prior to public hearing**

_____ **Decreases revenues or increases expenditures without balancing budget**

_____ **Budget required**

_____ **Statement of fiscal impact required**

_____ **Statement of social equity required**

_____ **Ordinance creating a new board requires detailed County Mayor's report for public hearing**

✓ **No committee review**

_____ **Applicable legislation requires more than a majority vote (i.e., 2/3's present _____, 2/3 membership _____, 3/5's _____, unanimous _____, CDMP 7 vote requirement per 2-116.1(3)(h) or (4)(c) _____, CDMP 2/3 vote requirement per 2-116.1(3)(h) or (4)(c) _____, or CDMP 9 vote requirement per 2-116.1(4)(c)(2) _____) to approve**

_____ **Current information regarding funding source, index code and available balance, and available capacity (if debt is contemplated) required**

2

| | |
|---|---|
| Approved _____ Mayor | Agenda Item No. 11(A)(6) |
| Veto _____ | 6-2-21 |
| Override _____ | |

<u>RESOLUTION NO.</u>     R-573-21

RESOLUTION APPROVING PARTIAL SETTLEMENT
AGREEMENT BETWEEN MIAMI-DADE COUNTY AND THE
PLAINTIFFS IN C.F.C., ET AL. V. MIAMI-DADE COUNTY
(CASE NO. 1:18-CV-22956-KMW); AUTHORIZING THE
COUNTY MAYOR OR COUNTY MAYOR'S DESIGNEE TO
EXECUTE THE SETTLEMENT AGREEMENT AND EXERCISE
ALL RIGHTS CONTAINED THEREIN; APPROVING CERTAIN
POLICIES IN ACCORDANCE WITH TERMS OF
SETTLEMENT AGREEMENT; RECOGNIZING PROVISIONS
OF RESOLUTION NO. R-163-17 AS SUPERSEDED BY STATE
STATUTE; AND PROVIDING THAT MIAMI-DADE COUNTY
SHALL COOPERATE WITH UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT TO THE EXTENT
REQUIRED BY LAW

**WHEREAS**, the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") issues immigration detainer requests to local criminal justice agencies, including the Miami-Dade County Corrections and Rehabilitation Department, to hold inmates for an additional period of time beyond when they would normally be released, up to 48 hours, including weekends and holidays; and

**WHEREAS**, on January 25, 2017, President Donald J. Trump signed Executive Order 13768 entitled "Enhancing Public Safety in the Interior of the United States," which, among other things, purported to affect the federal funding received from jurisdictions that were designated as "sanctuary jurisdictions"; and

**WHEREAS**, on February 17, 2017, this Board adopted Resolution No. R-163-17, which, among other things, directed the County Mayor or County Mayor's designee to cooperate with the federal government on immigration detainer requests to the extent permissible by law; and

Agenda Item No. 11(A)(6)
Page No. 2

**WHEREAS**, on July 20, 2018, a set of plaintiffs (C.F.C., S.C.C., L.M.S., WeCount!, Inc., and the Florida Immigrant Coalition), filed a putative class action suit for injunctive relief, declaratory relief, and incidental money damages against Miami-Dade County that alleged violations of the U.S. Constitution and Florida law relating to Miami-Dade County's cooperation with the federal government on immigration detainer requests; and

**WHEREAS**,  this action, which is styled as *C.F.C., et al. v. Miami-Dade County*, Case No. 1:18-cv-22956-KMW, is currently pending in the United States District Court for the Southern District of Florida; and

**WHEREAS**, since the initiation of this lawsuit, various events have impacted the underlying claims; and

**WHEREAS**, in 2019, the State of Florida enacted Chapter 2019-109, Laws of Florida, which (1) requires law enforcement agencies in Florida to comply with the requests made in an immigration detainer upon determining that the detainer is legally sufficient as defined by Florida law and (2) prohibits any state or local governmental entity from adopting or having in effect a policy that prohibits or impedes a law enforcement agency from complying with 8 U.S.C. § 1373 or cooperating with a federal immigration agency in various circumstances including, but not limited to, complying with an immigration detainer; and

**WHEREAS**, Chapter 2019-109, Laws of Florida, also provides certain limited exceptions where local cooperation with federal immigration authorities is not required by state law if an individual meets certain victim or witness criteria defined in section 908.104, Florida Statutes; and

Agenda Item No. 11(A)(6)
Page No. 3

**WHEREAS**, on January 20, 2021, President Joseph R. Biden, Jr. signed an Executive Order entitled "Executive Order on the Revision of Civil Immigration and Enforcement Policies and Priorities," which revoked Executive Order 13768 and reset the policies and priorities for enforcing civil immigration laws to align enforcement with the stated values and priorities of the Biden administration; and

**WHEREAS**, as part of the on-going litigation in *C.F.C., et al. v. Miami-Dade County*, the administration has negotiated the attached Partial Settlement Agreement, which would resolve certain claims against Miami-Dade County in exchange for the adoption of certain policies including, but not limited to, a procedure for applying the exceptions for victims and witnesses created by state law to the fullest extent permissible under the statute; and

**WHEREAS**, this Board desires to accomplish the purposes outlined in the accompanying memorandum, a copy of which is attached hereto as Exhibit A and incorporated herein by reference; and

**WHEREAS**, nothing in the Partial Settlement Agreement should be construed to require Miami-Dade County to perform any actions or ignore any duties that would contravene, circumvent, or otherwise conflict with its responsibilities under state and federal law, including, but not limited to, Chapter 2019-109, Laws of Florida, as codified in Chapter 908, Florida Statutes; and

**WHEREAS**, this Board finds that it is in the interest of Miami-Dade County to enter into the attached Partial Settlement Agreement,

**NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF COUNTY COMMISSIONERS OF MIAMI-DADE COUNTY, FLORIDA,** that:

**Section 1.**     This Board approves the Partial Settlement Agreement, in substantially the form attached hereto as Exhibit B, between Miami-Dade County and the plaintiffs in the lawsuit styled *C.F.C., et al., v. Miami-Dade County*, Case No. 1:18-CV-22956-KMW, currently pending in the United States District Court for the Southern District of Florida. This Board further authorizes the County Mayor or County Mayor's designee to execute the Partial Settlement Agreement for and on behalf of Miami-Dade County and to exercise all rights contained therein.

**Section 2.**     This Board hereby recognizes that the provisions of Resolution No. R-163-17 relating to cooperation with immigration detainer requests have been superseded by Chapter 2019-109, Laws of Florida, and, in accordance with the terms of this Partial Settlement Agreement, amends Resolution No. R-163-17 to direct the County Mayor or County Mayor's designee to ensure that, related to immigration detainer requests, Miami-Dade County:

1. is cooperating with the federal government to the extent required by state and federal law; and

2. remains fully compliant with all applicable federal and state laws and the United States and Florida Constitutions, including by entering into agreements with the federal government to reimburse Miami-Dade County for any and all costs relating to compliance with ICE detainer requests, provided that such agreements are in accordance with state law and the relevant terms of this Partial Settlement Agreement.

The Prime Sponsor of the foregoing resolution is Commissioner Jean Monestime.  It was offered by Commissioner **Rebeca Sosa**, who moved its adoption.  The motion was seconded by Commissioner **Sally A. Heyman** and upon being put to a vote, the vote was as follows:

Agenda Item No. 11(A)(6)
Page No. 5

| | | | |
|---|---|---|---|
| Jose "Pepe" Diaz, Chairman | | aye | |
| Oliver G. Gilbert, III, Vice-Chairman | | aye | |
| Sen. René García | aye | Keon Hardemon | aye |
| Sally A. Heyman | aye | Danielle Cohen Higgins | aye |
| Eileen Higgins | aye | Joe A. Martinez | aye |
| Kionne L. McGhee | aye | Jean Monestime | aye |
| Raquel A. Regalado | aye | Rebeca Sosa | aye |
| Sen. Javier D. Souto | aye | | |

The Chairperson thereupon declared this resolution duly passed and adopted this 2nd day of June, 2021. This resolution shall become effective upon the earlier of (1) 10 days after the date of its adoption unless vetoed by the County Mayor, and if vetoed, shall become effective only upon an override by this Board, or (2) approval by the County Mayor of this resolution and the filing of this approval with the Clerk of the Board.



MIAMI-DADE COUNTY, FLORIDA
BY ITS BOARD OF
COUNTY COMMISSIONERS

HARVEY RUVIN, CLERK

By:_____
    **Melissa Adames**
    Deputy Clerk

Approved by County Attorney as
to form and legal sufficiency. 

Michael B. Valdes

7

**EXHIBIT A**

# Memorandum

 MIAMI-DADE COUNTY

| | |
|---|---|
| **Date:** | June 2, 2021 |
| **To:** | Honorable Chairman Jose "Pepe" Diaz<br>and Members, Board of County Commissioners |
| **From:** | Daniella Levine Cava<br>Mayor *(signature: Danielle Levine Cava)* |
| **Subject:** | Recommendation for Approval of a Partial Settlement Agreement between Miami-Dade County and the Plaintiffs in *C.F.C., et al., v. Miami-Dade County*, Case No. 1:18-CV-22956-KMW |

## Recommendation

It is recommended that the Board of County Commissioners (Board) approve a partial settlement agreement between Miami-Dade County ("County") and the Plaintiffs in in the lawsuit styled *C.F.C., et al., v. Miami-Dade County*, Case No. 1:18-CV-22956-KMW, that is currently pending in the United States District Court for the Southern District of Florida. The settlement will resolve certain claims in the ongoing dispute between the County and the Plaintiffs, including any claims for monetary relief against the County and any entitlement to attorney's fees and costs that have been incurred thus far in the litigation. Pursuant to the terms of the settlement, the Plaintiffs will agree to release and discharge the County from all but one of the claims in their Second Amended Complaint and from any other claims that have been or could have been raised under the facts alleged in their pleadings. The only claim that would proceed if this settlement agreement were approved would be a re-styled claim that would exclusively seek prospective injunctive relief with no corresponding claim for monetary damages.

## Scope

This partial settlement agreement has countywide significance.

## Fiscal Impact/Funding Source

Under the terms of the partial settlement agreement, the Plaintiffs will release and discharge the County from any claim that would seek monetary damages and be solely responsible for any attorney fees and costs that they have incurred to date in this litigation. As a result, the County would avoid the potential to have any adverse monetary judgment, or attorney fees and costs award entered against it. There is no additional fiscal impact to the County because any additional responsibilities required by Partial Settlement Agreement can be undertaken with existing staff and resources.

## Track Record/Monitoring

Daniel Junior, Director of the Miami-Dade Corrections and Rehabilitation Department, and Alfredo Ramirez III, Director of the Miami-Dade Police Department, will oversee implementation of the settlement agreement relating to their respective departments on behalf of the County.

## Delegated Authority

This item authorizes the County Mayor or County Mayor's designee to execute the Partial Settlement Agreement for and on behalf of Miami-Dade County and to exercise all rights contained therein.

## Background

On January 25, 2017, President Donald J. Trump signed Executive Order 13768 entitled "Enhancing Public Safety in the Interior of the United States," which, among other things, purported to affect the federal funding received from jurisdictions that were designated as "sanctuary jurisdictions." On February 17, 2017, this Board adopted Resolution No. R-163-17, which, among other things, directed the County Mayor or County Mayor's designee to cooperate with the federal government on immigration detainer requests to the extent permissible by law.

On July 20, 2018, a set of plaintiffs (C.F.C., S.C.C., L.M.S.[1], WeCount!, Inc., and the Florida Immigrant Coalition, Inc.), filed a putative class action suit for injunctive relief, declaratory relief, and incidental money damages against Miami-Dade County that alleged violations of the U.S. Constitution and Florida law relating to Miami-Dade County's cooperation with the federal government on immigration detainer requests. Plaintiffs' Second Amended Complaint seeks injunctive and declaratory relief, along with incidental statutory damages, on behalf of a putative class and subclass, and sets forth four claims for relief: Count I asserts a Fourth Amendment violation, pursuant to 42 U.S.C § 1983, that seeks injunctive relief, incidental damages, and declaratory judgment on behalf of a putative class of those individuals held on detainers issued by United States Immigration and Customs Enforcement ("ICE"), WeCount!, and the Florida Immigrant Coalition. Count II asserts a Fourth Amendment violation, pursuant to 42 U.S.C § 1983, that seeks injunctive relief, incidental damages, and declaratory judgment on behalf of a putative sub-class of individuals held on ICE detainers where ICE is alleged to have relied on biometric confirmation and other database information for the detainer's probable cause determination, WeCount!, and the Florida Immigrant Coalition. Count III asserts a state law claim for unlawful imprisonment that seeks injunctive relief, incidental damages, and declaratory judgment on behalf of a putative class of those individuals held on ICE detainers, WeCount!, and the Florida Immigrant Coalition. Count IV asserts a violation of Art I., Sec. 12 of the Florida Constitution and seeks damages and declaratory relief on behalf of a putative class of those individuals held on ICE detainers, WeCount!, and the Florida Immigrant Coalition. The County has filed a Motion to Dismiss relating to the Plaintiffs' Second Amended Complaint that remains pending before the court. A prior Motion to Dismiss was granted in part and denied in part.

Since the initiation of this lawsuit, various events have impacted the underlying claims. In 2019, the State of Florida enacted Chapter 2019-109, Laws of Florida, which (1) requires law enforcement agencies in Florida to comply with the requests made in an immigration detainer upon determining that the detainer is legally sufficient as defined by Florida law and (2) prohibits any state or local governmental entity from adopting or having in effect a policy that prohibits or impedes a law enforcement agency from complying with 8 U.S.C. § 1373 or cooperating with a federal immigration agency in various circumstances including, but not limited to, complying with an immigration detainer. Chapter 2019-109, Laws of Florida, also provides certain limited exceptions where local cooperation with federal immigration authorities is not required by state law if an individual meets certain victim or witness criteria defined in section 908.104, Florida Statutes. In addition, on January 20, 2021, President Joseph R. Biden, Jr. signed an Executive Order entitled "Executive Order on the Revision of Civil Immigration and Enforcement Policies and Priorities," which revoked Executive Order 13768 and reset the policies and priorities for enforcing civil immigration laws to align enforcement with the stated values and priorities of the Biden administration.

---

[1]  Plaintiffs C.F.C., S.C.C., and L.M.S. are listed by their initials because they requested to proceed in the litigation anonymously due to privacy and security interests in protecting their confidentiality. The District Court granted their request and entered a protective order barring the County from disclosing any information which tends to identify Plaintiffs C.F.C., S.C.C., and L.M.S. absent limited circumstances.

In light of the foregoing, the County and the Plaintiffs have met and negotiated for several months in good faith to resolve all but one of the claims in Plaintiffs' Second Amended Complaint. These negotiations resulted in a proposal for the Plaintiffs to release and discharge the County from the causes of action set forth in all but one of the claims in their Second Amended Complaint and from any other claims that have been or could have been raised under the facts alleged in their pleadings in exchange for the adoption of the following policies:

1. Adoption of a procedure for applying the exceptions for victims and witnesses created by state law to the fullest extent permissible under the statute that would include providing access for the Miami-Dade Public Defender's Office to interview individuals for whom ICE has submitted a detainer request and to review the relevant detainer forms and documents transmitted by ICE with the individual.

2. Development of a multi-lingual fact sheet that will be distributed to any individual who is subject to an ICE detainer request that will detail the ICE detainer process, including: (i) the screening process described above; (ii) the length of time a person will continue to be held when subject to a detainer; (iii) a statement that if the person held is not transferred to ICE custody within 48 hours, he or she must be released; and (iv) information on how to contact an immigration attorney, including a working phone number for an appropriate legal services provider.

3. An agreement to include language in the Miami-Dade Police Department's policies and trainings that will encourage the issuance of a "Promise to Appear in Lieu of Arrest" when the most serious arrestable offense is a second-degree misdemeanor or county/municipal ordinance violation unless the Florida Rules of Criminal Procedure do not authorize the issuance of a "Promise to Appear in Lieu of Arrest" under the circumstances. Under Fla. R. Crim. P. 3.125, a "Promise to Appear in Lieu of Arrest" cannot be issued if the arresting officer determines that: (1) the accused fails or refuses to sufficiently identify himself or herself or supply the required information; (2) the accused refuses to sign the notice to appear; (3) the officer has reason to believe that the continued liberty of the accused constitutes an unreasonable risk of bodily injury to the accused or others; (4) the accused has no ties with the jurisdiction reasonably sufficient to assure the accused's appearance or there is substantial risk that the accused will refuse to respond to the notice; (5) the officer has any suspicion that the accused may be wanted in any jurisdiction; or (6) it appears that the accused previously had failed to respond to a notice or a summons or has violated the conditions of any pretrial release program.

4. An agreement to establish policies and procedures within the Miami-Dade Corrections and Rehabilitation Department ("MDCR") so that MDCR, in its capacity as booking officer, will issue a "Promise to Appear in Lieu of Arrest" to an individual if (a) the individual's most serious arrestable offense is a second-degree misdemeanor or county/municipal ordinance violation and (b) the booking officer determines, in accordance with Fla. R. Crim. P. 3.125 that there is a likelihood that the accused will appear as directed, based on a reasonable investigation of the accused's: (1) residence and length of residence in the community, which can be established by means other than a state or federally-issued ID; (2) family ties in the community; (3) employment record; (4) character and mental condition; (5) past record of convictions; or (6) past history of appearance at court proceedings.

5. An agreement to provide Plaintiffs, upon their request, with certain reports once every six months through 2024 relating to the implementation of the policies described above.

The County has evaluated the partial settlement offer and determined that it is in the interest of County to enter into the Partial Settlement Agreement attached as Exhibit A to the resolution.


_____
JD Patterson
Chief Public Safety Officer

**EXHIBIT B**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| C.F.C., individually and on behalf of those similarly situated; S.C.C., individually and on behalf of those similarly situated; L.M.S., individually and on behalf of those similarly situated; WECOUNT!, INC., a Florida not for profit corporation; FLORIDA IMMIGRANT COALITION, INC., a Florida not for profit corporation, | Civil Action No.  18-cv-22956-KMW |
| Plaintiffs, | |
| vs. | |
| MIAMI-DADE COUNTY, FLORIDA, | |
| Defendants. | |

## PARTIAL SETTLEMENT AGREEMENT AND RELEASE

This Partial Settlement Agreement and Release ("Agreement") is made by and between Plaintiffs C.F.C., S.C.C., L.M.S. (the "Individual Plaintiffs"), WeCount!, Inc., and Florida Immigrant Coalition, Inc. ("FLIC") (the "Plaintiff Organizations" and, collectively with the Individual Plaintiffs, the "Plaintiffs"), and Defendant Miami-Dade County, Florida ("Defendant," and together with Plaintiffs, the "Parties").

**WHEREAS,** Plaintiffs commenced a putative class action suit for injunctive relief, declaratory judgment, and incidental money damages on July 20, 2018 alleging constitutional violations and violations of Florida law against Defendant, styled "*C.F.C. et al. v. Miami-Dade County*," Case No. 1:18-cv-22956-KMW, currently pending in the United States District Court, Southern District of Florida (the "Action"); and

**WHEREAS**, Plaintiffs allege that Defendant's practice of honoring ICE detainer requests and detaining people on that basis alone when they are otherwise eligible for release is unlawful;

**WHEREAS**, Plaintiffs amended their complaint as of right on September 9, 2018, and amended the complaint a second time with leave from the Court on January 31, 2020 (the "Second Amended Complaint"); and

**WHEREAS**, Plaintiffs' Second Amended Complaint seeks injunctive and declaratory relief, along with incidental statutory damages, on behalf of a class and subclass, and sets forth four claims for relief: Count I (Fourth Amendment Violation (42 U.S.C § 1983) seeking injunctive relief, incidental damages, and declaratory judgment) on behalf of the ICE Detainer Class, WeCount!, and FLIC; Count II (Fourth Amendment Violation (42 U.S.C § 1983) seeking injunctive relief, incidental damages, and declaratory judgment) on behalf of Biometric Confirmation Subclass, WeCount!, and FLIC; Count III (Florida Unlawful Imprisonment seeking injunctive relief, incidental damages, and declaratory judgment) on behalf of the ICE Detainer Class, WeCount!, and FLIC; and Count IV (Violation of Art I., Sec. 12 of the Florida Constitution (Searches and Seizure) seeking damages and declaratory relief) on behalf of the ICE Detainer Class, Biometric Confirmation Subclass, WeCount!, and FLIC; and

**WHEREAS**, the Parties have engaged in discussions aimed at narrowing the legal claims at issue in the Action in exchange for implementing various safeguards in the ICE detainer process while the question of the constitutionality of honoring ICE detainer requests is considered by the Court; and

**WHEREAS**, the Parties wish to partially resolve some (but not all) of the claims in Plaintiffs' Second Amended Complaint pursuant to the terms set forth below; and

**WHEREAS**, this Agreement is not a class action settlement, but rather is a partial settlement between Plaintiffs C.F.C., S.C.C., L.M.S., WeCount!, Inc., and Florida Immigrant Coalition, individually, and Defendant; and

**WHEREAS**, nothing in this Agreement should be construed as an admission of liability by Defendant, and the Agreement cannot be used as an admission by Plaintiffs, interested persons, or Defendant in this or any other proceeding; and

**WHEREAS**, nothing in this Agreement should be construed to require Defendant to perform any actions or ignore any duties that would contravene, circumvent, or otherwise conflict with Defendant's responsibilities under state and federal law, including, but not limited to, Chapter 908, Florida Statutes;

**NOW, THEREFORE**, for good and valuable consideration, including the mutual covenants and mutual releases exchanged between the Parties, the adequacy of which are hereby acknowledged, and subject to the terms and conditions set forth herein, the Parties agree as follows:

## 1. Covenants

1.1.    Defendant shall, in accordance with Fla. Stat. § 908.105(c), make a determination as to whether an ICE detainer request is "facially sufficient" as defined by Fla. Stat. § 908.102(2) before complying with the requests in a detainer. Defendant shall, in accordance with Fla. Stat. § 908.104, honor protections created by the Florida Legislature to the fullest extent permissible under the statute, including protections for victims and witnesses.

In addition, Defendant shall develop, in conjunction with the Miami-Dade Public Defender's Office (PD-11), a screening process for any individual for whom ICE has submitted a detainer request that, at a minimum, would:

(a) establish a standardized method of communication between Defendant and PD-11 that would advise PD-11 as soon as possible of any individual for whom ICE has submitted a detainer request;

(b) allow for PD-11 to interview individuals for whom ICE has submitted a detainer request and to review the relevant detainer forms and documents transmitted by ICE with the individual;

(c) establish a standardized method of communication between Defendant and PD-11 to allow PD-11, or other counsel representing the subject of a detainer, to bring to Defendant's attention any potential issues that may exist with a detainer request that has been submitted by ICE, including, but not limited to, (1) potential misidentification by ICE based upon confirmation of the individual's identity by PD-11, or (2) evidence that Defendant's cooperation requirements under Ch. 908, Florida Statutes may not apply because the individual meets one of the listed exemptions in Fla. Stat. § 908.104(5)-(8); and

(d) allocate resources to ensure that PD-11 are able to interview individuals for whom ICE has submitted a detainer request and bring any potential issues to Defendant's attention as expeditiously as possible so that PD-11 has the ability to conduct these tasks within 72 hours of receiving notification that a detainer has been issued;

(e) establish policies and procedures for handling circumstances where an individual for whom ICE has submitted a detainer request would, absent the detainer request,

15

otherwise be eligible for release from custody and has not yet had the opportunity

to be interviewed by PD-11.

This screening process will apply to any detainer request that Defendant receives from ICE regardless of whether it is received before, during, or after booking.

In addition, Defendant shall not hold a person on a detainer request upon receipt of evidence, from the screening process referenced above or other source, that the subject of the detainer falls within an exemption listed in Fla. Stat. § 908.104(5)-(8).

1.2     Defendant will work in coordination with the Plaintiff Organizations to develop a multilingual fact sheet that will be distributed to any individual who is subject to an ICE detainer request. The fact sheet will detail the ICE detainer process, including: (1) the screening process described in Paragraph 1.1. above; (2) the length of time a person will continue to be held when subject to a detainer; (3) a statement that if the person held is not transferred to ICE custody within 48 hours, he or she must be released; and (4) information on how to contact an immigration attorney, including a working phone number for an appropriate legal services provider. This fact sheet will be made available in English, Spanish, Portuguese, Haitian Creole, Mam, Ixil, and Mixteco. In addition, accessible formats of the fact sheet will be developed and provided for individuals who cannot, for any reason, understand, access, read, or view the written version of the fact sheet.

1.3     Defendant will include language in its Miami-Dade Police Department policies and trainings that will encourage the issuance of a "Promise to Appear in Lieu of Arrest" when the most serious arrestable offense is a second degree misdemeanor or county/municipal ordinance violation unless the arresting officer determines that: (1) the accused fails or refuses to sufficiently identify himself or herself or supply the required information;

(2) the accused refuses to sign the notice to appear; (3) the officer has reason to believe that the continued liberty of the accused constitutes an unreasonable risk of bodily injury to the accused or others; (4) the accused has no ties with the jurisdiction reasonably sufficient to assure the accused's appearance or there is substantial risk that the accused will refuse to respond to the notice; (5) the officer has any suspicion that the accused may be wanted in any jurisdiction; or (6) it appears that the accused previously has failed to respond to a notice or a summons or has violated the conditions of any pretrial release program. Nothing in this agreement limits an officer's existing discretion under Florida law to issue a "Promise to Appear in Lieu of Arrest" for a misdemeanor of the first degree, nor to issue a civil citation for any offense eligible under County code.

1.4   Defendant will establish policies and procedures within the Miami-Dade Corrections and Rehabilitation Department ("MDCR") so that MDCR, in its capacity as booking officer, will  issue a "Promise to Appear in Lieu of Arrest" to an individual if (a) the individual's most serious arrestable offense is a second degree misdemeanor or county/municipal ordinance violation and (b) the booking officer determines that there is a likelihood that the accused will appear as directed, based on a reasonable investigation of the accused's: (1) residence and length of residence in the community, which can be established by means other than a state or federally-issued ID; (2) family ties in the community; (3) employment record; (4) character and mental condition; (5) past record of convictions; or (6) past history of appearance at court proceedings. However, for the avoidance of doubt, the booking officer shall not, in accordance with Fla. R. Crim. P. 3.125, issue a notice to appear if: (1) the accused fails or refuses to sufficiently identify himself or herself or supply the required information; (2) the accused refuses to sign the notice to appear;

(3) the booking officer has reason to believe that the continued liberty of the accused constitutes an unreasonable risk of bodily injury to the accused or others; (4) the accused has no ties with the jurisdiction reasonably sufficient to assure the accused's appearance or there is substantial risk that the accused will refuse to respond to the notice; (5) the booking officer has any suspicion, based on a records check, that the accused may be wanted in any jurisdiction; or (6) it appears that the accused previously has failed to respond to a notice or a summons or has violated the conditions of any pretrial release program.

For any individual whose most serious arrestable offense is a second-degree misdemeanor or county/municipal ordinance violation and who was not issued a "Promise to Appear in Lieu of Arrest," Defendant shall include within its policies and procedures a requirement for the booking officer to document the reason for the "Promise to Appear in Lieu of Arrest" not being issued.

Nothing in this agreement limits an officer's existing discretion under Florida law to issue a "Promise to Appear in Lieu of Arrest" at booking for a misdemeanor of the first degree.

1.5    Defendant shall, upon request by the Plaintiff Organizations, provide a report every six months through 2024 that: (a) lists all individuals for whom ICE has submitted a detainer request in the style and including the data of Defendant's currently maintained "ICE Hold for Immigration Reports"; (b) lists all individuals who were arrested for a second degree misdemeanor or county/municipal ordinance violation and issued a "Promise to Appear in Lieu of Arrest" by an arresting officer at the Miami-Dade Police Department, with such list to include the offense, date of incident, location of incident by zip code, and the race and ethnicity of the accused; (c) lists all individuals who were arrested for a second degree

misdemeanor or county/municipal ordinance violation and issued a "Promise to Appear in Lieu of Arrest" by a booking officer at MDCR, with such list to include the offense, date of incident, location of incident by zip code, and the race and ethnicity of the accused; (c) lists all individuals who were arrested for a second degree misdemeanor or county/municipal ordinance violation and not issued a "Promise to Appear in Lieu of Arrest" by a booking officer at MDCR, with such list to include the offense, date of incident, location of incident by zip code, the race and ethnicity of the accused, and the reason for the "Promise to Appear in Lieu of Arrest" not being issued.

## 2.     Releases

2.1     In consideration of the Covenants in Paragraph 1 above, and only upon approval of this Settlement Agreement by the Miami-Dade Board of County Commissioners, Plaintiffs will release and discharge Defendant from the causes of action set forth in Counts II, III, and IV of the Second Amended Complaint and from any other claims that have been or could have been raised by Plaintiffs under the facts alleged in their pleadings with the exception of Count I as described in Paragraph 2.2 below.

2.2     Plaintiffs will seek relief from the Court, as agreed-upon by the Parties, to file a Third Amended Complaint, which will amend Count I to seek injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908) for violations of the Fourth Amendment. The relief will be sought on an individual basis, no longer on a class-wide basis. Plaintiffs will not seek declaratory relief or damages associated with their Fourth Amendment claim. The Third Amended Complaint will also change the named defendant from Miami-Dade County to Daniel Junior, in his official capacity as Director of the Miami-Dade Corrections and Rehabilitation Department, as is customary for claims under *Ex Parte Young*, 209 U.S.

123 (1908). And, in consideration of Plaintiffs' release and discharge of claims as described in Paragraph 2.1 above, Defendant shall not oppose Plaintiffs' request for leave to amend.

2.3     Within five (5) business days of the Miami-Dade Board of County Commissioners' vote approving this Agreement, Plaintiffs shall seek leave from the Court to file the Third Amended Complaint in the manner described in Paragraphs 2.1 and 2.2 above.

3.  **Representations and Warranties:** Plaintiffs represent and warrant that they have full power and authority to enter into and deliver this Agreement on behalf of themselves and any affiliated Persons, and each individual signing this Agreement on behalf of each of the Plaintiffs is fully authorized to do so. Defendant represents and warrants that, upon approval of this agreement by the Miami-Dade Board of County Commissioners, it has full power and authority to enter into and deliver this Agreement on behalf of itself and any affiliated Persons, and the individual signing this Agreement on behalf of Defendant has been fully authorized to do so by the Board of County Commissioners. However, the Parties agree and acknowledge that Defendant is not entering into this Agreement on behalf of any municipalities, other law enforcement agencies, or separately elected county constitutional officers that, now or in the future, may have responsibilities relating to the Agreement.

4.  **Costs and Expenses**: The Parties to this Agreement are solely responsible for their own costs and expenses, including, but not limited to, attorneys' fees, incurred with respect to these claims within the Action, and the negotiation, drafting, and execution of this Agreement. Parties retain the right to seek fees, costs, and expenses incurred after the date of this settlement agreement for remaining claims not resolved herein.

5. **Entire Agreement**: This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous communications, agreements, and understandings with respect to the subject matter hereof, express or implied, oral or written.

6. **Careful Review and Understanding of this Agreement**: The Parties each represent and warrant that they have carefully read and reviewed every provision of this Agreement and completely understand its terms. The Parties each represent and warrant that they have made a full and complete investigation of the circumstances surrounding this Agreement, aided by independent attorneys and professionals of their choice; that they have full knowledge of all facts involved; that they sought and received competent legal advice with respect to this Agreement; and that they each have relied wholly upon their own judgment and knowledge and have not been influenced to any extent whatsoever in making this Agreement by any representations or statements made by the opposing Party or anyone acting on behalf of the opposing Party except as set forth in this Agreement. Thus, the Parties each specifically disclaim reliance on any representations and therefore waive any claim of fraudulent inducement to enter into this Agreement. Such waiver includes any failure by the other Party to disclose material information, whether or not a duty to disclose exists. The Parties each further represent and warrant that they are voluntarily entering into this Agreement.

7. **Amendments**: This Agreement may not be amended, altered, or modified except by a written amendment duly executed by the Plaintiff Organizations, or their successors or assigns, and the Defendant, or its successors or assigns.

8. **Effective Date and Implementation**: This Agreement is effective upon the earlier of (1) 10 days after approval by the Miami-Dade Board of County Commissioners unless vetoed by

the County Mayor, and if vetoed, shall become effective only upon an override by the Board of County Commissioners, or (2) execution of this Agreement by the County Mayor after approval by the Miami-Dade Board of County Commissioners. Defendant shall have 60 days from the effective date of this Agreement to implement its responsibilities under Paragraph 1 above.

9.  **Governing Law:** This Agreement shall be construed under, and interpreted in accordance with, the laws of the State of Florida, without regard to its choice of law rules.

10. **Retention of Jurisdiction**: The Parties agree that the United States District Court, Southern District of Florida shall have exclusive jurisdiction over the subject matter of this Agreement and the Parties for the duration of the performance of the terms and provisions of this Agreement for the purpose of enabling the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Agreement, or to effectuate or enforce compliance with its terms, or to resolve disputes.

11. **Attorneys' Fees and Costs:**  The Parties agree that the prevailing Party in any proceeding arising out of this Agreement shall be entitled to its attorney's fees and costs of court.

12. **Severability:** If any provision of this Agreement shall be held to be illegal, unlawful, or unenforceable by a change in state or federal law or by binding precedent from a state or federal court, such holding shall not affect the validity or enforceability of the other provisions of this Agreement.

13. **Counterparts:** This Agreement may be executed in counterparts, each of which shall be deemed original, but all of which shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement by their duly authorized representatives as of the last date set forth below.

STATE OF FLORIDA

COUNTY OF _Miami Dade._

The foregoing instrument was acknowledged before me by means of __X__ physical presence or _____ online notarization on, 05/10/2021 by Oscar Londono _____, who is personally known to me or who produced Driver's License as identification.

Notary Public State of Florida

Name typed, printed, or stamped
My Commission Expires: 11/12/2021 .

(Affix Notarial Seal)

**Plaintiff WeCount!, Inc.**

By: _____

Name: Oscar Londuño

Title: Executive Director

Date: 05/10/2021

Notary Public State of Florida
Daylin D. Galindo
My Commission GG 159412
Expires 11/12/2021

STATE OF FLORIDA

COUNTY OF _____

The foregoing instrument was acknowledged before me by means of _____ physical presence or _____ online notarization on, _____ by _____, who is personally known to me or who produced Driver's License as identification.

Notary Public State of Florida

Name typed, printed, or stamped
My Commission Expires:

(Affix Notarial Seal)

**Plaintiff Florida Immigrant Coalition, Inc.**

By: _____

Name: _____

Title: _____

Date: _____

23

personally known to me or who produced **Plaintiff Florida Immigrant Coalition, Inc.**
Driver's License as identification.

Notary Public State of Florida

Name typed, printed, or stamped
My Commission Expires: Jan 26,2024

(Affix Notarial Seal)

IGOR SANDLER
Notary Public - State of Florida
Commission # GG 951116
My Comm. Expires Jan 26, 2024

By: _____

Name: MARIA RODRIGUEZ

Title: EXEC. DIR.

Date: 5/10/21

STATE OF FLORIDA

COUNTY OF _____

STATE OF FLORIDA

COUNTY OF _____

The foregoing instrument was acknowledged before me by means of physical presence or online notarization on, _____ by _____, who is personally known to me or who produced Driver's License as identification.

Notary Public State of Florida

Name typed, printed, or stamped
My Commission Expires:

(Affix Notarial Seal)

**Plaintiff WeCount!, Inc.**

By: _____

Name: _____

Title: _____

Date: _____

The foregoing instrument was acknowledged before me by means of physical presence or online notarization on, _____ by _____, who is personally known to me or who produced Driver's License as identification.

Notary Public State of Florida

Name typed, printed, or stamped
My Commission Expires:

(Affix Notarial Seal)

STATE OF FLORIDA

COUNTY OF _____

The foregoing instrument was acknowledged before me by means of physical presence or online notarization on, _____ by _____, who is personally known to me or who produced Driver's License as identification.

24

12

STATE OF FLORIDA

COUNTY OF _Miami-Dade_

The foregoing instrument was acknowledged before me by means of ____ physical presence or ✓ online notarization on, May 7, 2021 by _C F C_____, who is personally known to me or who produced Driver's License as identification.

Notary Public State of Florida

Name typed, printed, or stamped
My Commission Expires:

(Affix Notarial Seal)

ROSELIRIS MARIA DOMINGUEZ
Notary Public - State of Florida
Commission # GG 299511
My Comm. Expires Apr 13, 2023
Bonded through National Notary Assn.

**Plaintiff C.F.C.**

**By:** _C F C_

**Name:** _C F C_

**Date:** _7/5 2021_

---

STATE OF FLORIDA

COUNTY OF _____

The foregoing instrument was acknowledged before me by means of ____ physical presence or _____ online notarization on, _____ by _____, who is personally known to me or who produced Driver's License as identification.

Notary Public State of Florida

Name typed, printed, or stamped
My Commission Expires:

(Affix Notarial Seal)

**Plaintiff S.M.S.**

**By:** _____

**Name:** _____

**Date:** _____

STATE OF FLORIDA

COUNTY OF _____

The foregoing instrument was acknowledged before me by means of _____ physical presence or _____ online notarization on, _____ by _____, who is personally known to me or who produced Driver's License as identification.

Notary Public State of Florida

Name typed, printed, or stamped
My Commission Expires:

(Affix Notarial Seal)

Plaintiff C.F.C.

**By:** _____

**Name:** _____

**Date:** _____


STATE OF FLORIDA

COUNTY OF Miami-Dade

The foregoing instrument was acknowledged before me by means of _____ physical presence or ✓ online notarization on, May 15, 2021 by S CC _____, who is personally known to me or who produced Driver's License as identification.

Notary Public State of Florida

Name typed, printed, or stamped
My Commission Expires:

(Affix Notarial Seal)

Plaintiff S.M.S.   S.C.C.

**By:** S C C

**Name:** _____

**Date:** 15 Mayo - 2021

ROSELIRIS MARIA DOMINGUEZ
Notary Public - State of Florida
Commission # GG 299511
My Comm. Expires Apr 13, 2023
Bonded through National Notary Assn.

Roseliris Domin

26

STATE OF FLORIDA

COUNTY OF _Miami-Dade_

The foregoing instrument was acknowledged before me by means of ____ physical presence or _✓_ online notarization on, _May 15, 2021_ by _LmS_ , who is personally known to me or who produced Driver's License as identification.

Notary Public State of Florida

Name typed, printed, or stamped
My Commission Expires: 4/13/2023
_Roselliris Domin_
(Affix Notarial Seal)

ROSELIRIS MARIA DOMINGUEZ
Notary Public - State of Florida
Commission # GG 299511
My Comm. Expires Apr 13, 2023
Bonded through National Notary Assn.

Approved by the County Attorney as
To form and legal sufficiency.

_____

(OFFICIAL SEAL)

ATTEST:
HARVEY RUVIN, CLERK

By:
_____
  Deputy Clerk

Plaintiff L.M.S.

By: _L. M. S_

Name: _L. M. S_

Date: _18-05-2021_

MIAMI-DADE COUNTY, FLORIDA

By:_____
Name:  Daniella Levine Cava
    Title:   Mayor

Effective Date:_____

27