**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| C.F.C., individually and on behalf of those similarly situated; S.C.C., individually and on behalf of those similarly situated; WECOUNT!, INC., a Florida not for profit corporation; FLORIDA IMMIGRANT COALITION, INC., a Florida not for profit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>MIAMI-DADE COUNTY, FLORIDA,<br><br>Defendant. | Civil Action No. 1:18-cv-22956 |

## MOTION TO ENFORCE PARTIAL SETTLEMENT AGREEMENT AND REQUEST FOR ATTORNEY'S FEES

Plaintiffs C.F.C., S.C.C., WeCount! and Florida Immigrant Coalition ("FLIC"), on behalf of their members and their organizations as a whole (collectively, "Plaintiffs"), respectfully move this Court to enforce the partial settlement agreement ("the agreement") in this matter and award related attorneys' fees to Plaintiffs.

Following the considerable effort and dedication of Plaintiffs and Defendant Miami-Dade County ("the Parties"), the Parties reached a favorable partial settlement agreement more than two years ago. ECF No. 119; Ex. 1. As detailed below, Defendant complied with the partial settlement agreement for mere months, followed by many more months evading Plaintiffs' efforts to seek compliance or even communication. For this reason, Plaintiffs have been forced to seek judicial intervention.

1

## I. FACTUAL BACKGROUND

### a. *C.F.C. et al v. Miami-Dade County*

On July 20, 2018, Plaintiffs commenced a putative class action suit for injunctive relief, declaratory judgment, and incidental money damages, alleging constitutional violations and violations of Florida law against Defendant. ECF No. 1. Plaintiffs alleged in part that Defendant's practice of honoring ICE detainer requests and detaining people on that basis alone, when they are otherwise eligible for release in accordance with Florida Statute § 908.104(8), is unlawful. Plaintiffs amended their complaint as a matter of right on September 9, 2018, ECF No. 22, and amended the complaint a second time with leave from the Court on January 31, 2020, ECF No. 80 ("Second Amended Complaint"). Plaintiffs' Second Amended Complaint sought injunctive and declaratory relief, along with incidental statutory damages, on behalf of a class and subclass, and set forth four claims for relief. ECF No. 80 at 27-34.

### b. The Parties entered into a partial Settlement agreement that resolved all but one remaining claim.

Well in advance of a September 13, 2021 jury trial date, the Parties entered into settlement negotiations, returning to this Court repeatedly to report on progress and seek stays of deadlines in order to support further settlement conversations. *See* ECF Nos. 111, 112, 114.

On June 16, 2021, the Parties entered a partial settlement agreement. ECF No. 119. In consideration of the Plaintiffs' agreement to release and discharge Defendant from the causes of action set forth in Counts II, III, and IV of the Second Amended Complaint, Defendant agreed to a screening process to identify and release individuals falling under the exceptions for victims and witnesses outlined by state law. *Id.* at Ex. 1, at 12-22. Settlement Section 1.1 states: "Defendant shall, in accordance with Fla. Stat. § 908.104, honor protections created by the Florida Legislature

to the fullest extent permissible under the statute, including protections for victims and witnesses."

*Id.* at 14-16.

The settlement agreement lays out five major obligations relating to the victim and witness exceptions:

(1) Section 1.1 states that MDCR "shall, in accordance with Fla. Stat. § 908.105(c), make a determination as to whether ICE detainer request is 'facially sufficient' as defined by Fla. Stat. § 908.102(2) before complying with the requests in a detainer" and that MDCR shall "honor protections created by the Florida legislature to the fullest extent permissible under the statute, including protections for victims and witnesses;"

(2) Section 1.1(a) states that MDCR shall "establish a standardized method of communication between Defendant and PD-11 that would advise PD-11 as soon as possible of any individual for whom ICE has submitted a detainer request;"

(3) Section 1.1(b) allows "PD-11 to interview individuals for whom ICE has submitted a detainer request and to review the relevant detainer forms and documents transmitted by ICE with the individual;"

(4) Section 1.1(c) requires a "standardized method of communication between Defendant and PD-11 to allow PD-11 . . . to bring to Defendant's attention any potential issues that may exist with a detainer request that has been submitted by ICE, including but not limited to, (1) potential misidentification by ICE based upon confirmation of the individual's identity by PD-11, or (2) evidence that Defendant's cooperation requirements under Ch. 908, Florida Statutes may not apply because the individual meets one of the listed exemptions in Fla. Stat §§ 908.104(5)-(8);" and

(5) Section 1.1(e) provides that "Defendant shall not hold a person on a detainer request upon receipt of evidence, from the screening process referenced above or other source, that the subject of the detainer falls within an exemption listed in Fla. Stat. § 908.104(5)-(8)." *Id.* at 13-19.

Further, Settlement Section 1.5 contains reporting requirements to ensure data sharing and to allow Plaintiffs to monitor compliance with other provisions of the agreement. It states: "Defendant shall, upon request by the Plaintiff Organizations, provide a report every six months through 2024 that:

3

(a) lists all individuals for whom ICE has submitted a detainer request in the style and including the data of Defendant's currently maintained "ICE Hold for Immigration Reports;"

(b) lists all individuals who were arrested for a second degree misdemeanor or county/municipal ordinance violation and issued a "Promise to Appear in Lieu of Arrest" by an arresting officer at the Miami-Dade Police Department, with such list to include the offense, date of incident, location of incident by zip code, and the race and ethnicity of the accused;

(c) lists all individuals who were arrested for a second degree misdemeanor or county/municipal ordinance violation and issued a "Promise to Appear in Lieu of Arrest" by a booking officer at MDCR, with such list to include the offense, date of incident, location of incident by zip code, and the race and ethnicity of the accused;

(d) lists all individuals who were arrested for a second degree misdemeanor or county/municipal ordinance violation and not issued a "Promise to Appear in Lieu of Arrest" by a booking officer at MDCR, with such list to include the offense, date of incident, location of incident by zip code, the race and ethnicity of the accused, and the reason for the "Promise to Appear in Lieu of Arrest" not being issued." *Id.* at 18-19.

The agreement disposed of all claims except those alleged in Count I. In accordance, Plaintiffs filed a Third Amended Complaint, which amended Count I to seek injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908), for violations of the Fourth Amendment. Plaintiffs subsequently filed a Motion for Summary Judgment, which remains pending. ECF No. 134.

### c. Defendant has failed to comply with the agreed-upon Public Defender screening process, resulting in dozens of people being unnecessarily detained.

As a result of the agreement, the Miami-Dade County Public Defender ("the Public Defender") initiated a screening process for incarcerated people who had immigration detainers. The Public Defender, in agreement with Defendant, began using a standardized form, Declaration of Applicable Exemption to ICE Detainer Request ("Declaration"), to notify Miami-Dade Corrections and Rehabilitation Department ("Corrections") when a detained person fell within one of the exemptions to the detainer policy. *See* Exhibit 2 (Redacted Declaration of Applicable

4

Exemption to ICE Detainer Request). Defendant set up a specific email address to receive the forms.

The Declaration contains three pieces of information: that the Public Defender (1) "confirms receipt of a copy of a detainer request and accompanying documentation issued by [ICE]," (2) "has reviewed the relevant detainer forms and accompanying documentation issued by [ICE] ... as part of the screening process described in County Resolution No. R-573-21," and (3) "has received evidence in the form of a statement that [person] was the victim of [crime] and, therefore, meets the listed exemption in Fla. Stat. § 908.104(8)." *Id.*

Shortly after the settlement was approved, the Public Defender began meeting with incarcerated individuals who were subject to ICE detainer requests. Where those individuals fell within an exception to the detainer policy, the Public Defender sent Declarations to Corrections. Beginning in approximately September 2021, upon receipt of completed Declarations, Corrections began releasing people identified by the Public Defender in accordance with Section 1.1(e) of the agreement. From September 2021 to July 2022, Corrections continued to comply with Section 1.1(e).

However, beginning in approximately July 2022, Corrections ceased responding to the Declarations sent by the Public Defender and stopped releasing people who had been identified as exempt from mandatory ICE holds. *See* Exhibit 3 (E-mail from Trisha Pasdach to Rebecca Sharpless, Dated September 8, 2022). The last Declaration that Corrections even acknowledged (after follow-up from the Public Defender) was dated July 19, 2022. Ex. 4 (E-mail from Patricia Jones Cummings to Trisha Pasdach, Dated August 4, 2022). Corrections noted in an email that there would be a "delayed response" to the Declaration, and that Corrections would respond when able to. *Id.* To Plaintiffs' understanding, Corrections never followed up.

### d. Defendant has failed to comply with the reporting requirements of the partial settlement agreement.

Section 1.5 of the agreement requires Defendant, upon request by Plaintiffs, to provide a written report to Plaintiffs every six months through 2024. Ex. 1 at 18-19. This report is to contain a list of individuals in Corrections custody who are subject to ICE detainers, in addition to a list of all individuals who received Promises to Appear in Lieu of Arrest for certain arrestable offenses. *Id.* In November 2021, the Parties agreed that Defendant would provide the first six-month report by December 16, 2021. On December 27, 2021, Plaintiffs received an incomplete report and assurances that the rest of the report would be sent shortly. In February, Plaintiffs' counsel contacted Defendant to follow-up on the remaining items missing from the first six-month report. Two weeks later, Plaintiffs' counsel wrote again, having received no response. On March 14, 2022, Defendant responded that they were still working on the first six-month report. On April 8, 2022, Plaintiffs received the remaining data from the first six-month report—initially due on December 16, 2022 and fully anticipated by Defendant as party to the partial settlement agreement.

The considerable effort on the part of Plaintiffs to secure that initial report foretold what was to come. Since that time, Defendant has failed to provide any additional reports in response to Plaintiffs' repeated requests.

### e. Plaintiffs have made numerous unsuccessful attempts to communicate with Defendant and secure compliance with the settlement agreement.

Plaintiffs have made several efforts to secure Defendant's compliance with the agreement. To date, these efforts have been fruitless. On September 9, 2022, Plaintiffs contacted Defendant to inquire about the cessation of compliance with Public Defender requests. Counsel for the parties conferred on September 30, 2022 to address Plaintiffs' understanding that Defendant was not complying with the portions of the settlement agreement related to the victim and witness

6

screening. Defendant stated that they had instructed Corrections to provide Corrections' written position on whether they were complying with exemption requests to counsel for Defendant. When Plaintiff followed up on October 19, 2022, Defendant stated that Corrections is aware of their communication and that they would get back to Plaintiffs as soon as they can. Plaintiffs received no further communication on this matter from Defendant.

More recently, on April 11, 2023, Plaintiffs notified Defendant that they had learned that Defendant had ceased processing forms as part of the screening process agreed to by the parties in the agreement. At that time, Plaintiffs requested a phone call to discuss a resolution that would ensure compliance with the settlement agreement and requested the latest six-month report available, in accordance with Section 1.5 of the agreement. Despite repeated follow-up since April, Plaintiffs have been unable to secure even confirmation from Defendant that they are no longer implementing the screening, much less compliance. Instead of contacting Corrections and confirming that, as the Public Defender has noted, the screening process is not being complied with, Defendant has asked Plaintiff to produce evidence that Plaintiff is not privy to, such as emails between Corrections (accessible by Defendant) and the Public Defender. *See* Ex. 5 (E-mail from Anita Viciana to Miriam Haskell, Dated April 19, 2023). Defendant has repeatedly evaded Plaintiff's questions about compliance—and even failed to produce the six-month report that was requested on April 11, 2023. *Id.*; Ex. 6 (E-mails Between Anita Viciana and Miriam Haskell, Dated April 11, 2023-May 3, 2023).

On August 15, 2023, Plaintiffs asked Defendant whether Corrections will evaluate and respond to detainer exemption requests that they receive *going forward* and whether Corrections had stopped responding to detainer exemption requests received since at least July 2022. Additionally, Plaintiffs once again requested the six-month report and further stated that they

7

would like to address these matters without Court intervention, but that they were "reaching a point where that may not be possible." Ex. 7 (E-mail from Miriam Haskell to Anita Viciana and Michael Valdez, Dated August 15, 2023). One week later, Defendant requested additional time to respond and stated that a response would be forthcoming "ASAP." *Id.* (E-mail from Anita Viciana to Miriam Haskell, Dated August 22, 2023). No further communication has been received since then, including even simply the six-month report. Because of the ongoing non-compliance, delay and evasiveness of Defendant, Plaintiffs have been forced to seek Court intervention.

## II. MEMORANDUM OF LAW

### a. This Court retains subject matter jurisdiction to hear this motion.

This Court has continuing subject matter jurisdiction to hear this motion and enforce the terms of the parties' joint settlement agreement. Plaintiffs' action remains pending before this Court as litigation regarding Count I is ongoing.

As this Court has previously stated, "the power to implement a settlement agreement between the parties inheres in the district court's role as supervisor of the litigation, and the exercise of that power is entrusted to the court's sound discretion." *South Beach Suncare, Inc. v. Sea & Ski Corp.*, 1999 WL 350458, at *6 (S.D. Fla. May 17, 1999), *distinguished on other grounds by In re MarketXT Holdings Corp.*, 336 B.R. 39, 55 (Bankr. S.D.N.Y. 2006). It is well-settled in the Eleventh Circuit that district courts have "inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case." *Kent v. Baker*, 815 F.2d 1395, 1398 (11th Cir. 1987) (quoting *Cia Anon Venezolana De Navigacion v. Harris*, 374 F.2d 33, 36 (5th Cir. 1967)).[1] In *Kent*, the Eleventh Circuit addressed the issue of whether the district court had jurisdiction to consider the validity of the settlement agreement. The court concluded that "a

---

[1] Decisions of the Fifth Circuit issued before October 1, 1981, are binding precedent on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

8

district court has jurisdiction to enforce a settlement agreement, at least when one party refuses to abide by the agreement prior to dismissal of the action." *Id.* at 1400. Recent Eleventh Circuit and Southern District of Florida case law reaffirms that principle. *See, e.g.*, *Szanto v. Bistritz*, 743 F. App'x 940, 942 (11th Cir. 2018); *Contraband Sports, LLC v. Fit Four*, LLC, No. 17-24615-CIV, 2018 WL 6620902, at *2 (S.D. Fla. Oct. 11, 2018).

Federal courts across the country have similarly embraced this principle and recognize that "a district court possesses the inherent power to 'summarily enforce a settlement entered into by litigants while litigation is pending before it.'" *Reed v. United States*, 717 F. Supp. 1511, 1514 (S.D. Fla. 1988), *quoting Mass. Cas. Ins. Co. v. Forman*, 469 F.2d 259, 260 (5th Cir. 1972)); *see also T St. Dev., LLC v. Dereje & Dereje*, 586 F.3d 6, 11 (D.C. Cir. 2009) ("If ... a party seeks to enforce a settlement while the underlying suit remains pending, then the district court has jurisdiction to enforce the related settlement."); *Clark v. Sch. Bd. of Bradford Cnty., Fla.*, No. 3:09-cv-901, 2010 WL 4696063, at *6 (M.D. Fla. Oct. 13, 2010) (finding court had jurisdiction over settlement agreement in pending case, granting motion to enforce, and then dismissing case with prejudice); *United States v. Stambler*, No. 06-0505, 2008 WL 5245353, at *6 (S.D. Ala. Dec. 2, 2008) ("In the instant matter, then, there is no need to enter into a jurisdictional analysis [regarding the motion to enforce settlement], as the case has not been dismissed."). As this case has not yet been dismissed, and Defendant is in breach of the parties' joint settlement agreement, *see infra* II(d), this Court has subject matter jurisdiction to enforce that agreement.

Additionally, the parties have stipulated to this Court's retention of jurisdiction over the settlement agreement. Section 10 of the parties' joint settlement agreement states:

9

> The Parties agree that the United States District Court, Southern District of Florida shall have exclusive jurisdiction over the subject matter of this Agreement and the Parties for the duration of the performance of the terms and provisions of this Agreement for the purpose of enabling the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Agreement, or to effectuate or enforce compliance with its terms, or to resolve disputes. Ex. 1 at 22.

The parties' joint settlement agreement contemplates reporting requirements through 2024. *Id.* at 18. Thus, any past or ongoing breaches of Defendants' duties are well within the durational limits of the agreement, and the Court retains jurisdiction over this matter. *Cf. Moebius v. Moyal*, No. 16-CV-23110, 2021 WL 4255246, at *5 (S.D. Fla. Sept. 2, 2021), *report and recommendation adopted sub nom. Moebius v. Kfir Moyal*, No. 16-CV-23110-WPD, 2021 WL 4244888 (S.D. Fla. Sept. 17, 2021) (no jurisdiction existed where parties reached no agreement regarding the Court's retention of jurisdiction to enforce the terms of the settlement agreement).

### b. Venue is proper in the Southern District of Florida.

Venue is proper in the Southern District of Florida because a substantial part of the events or omissions giving rise to this action occurred or will occur in this District. 28 U.S.C. § 1391(b)(2).

### c. An enforceable settlement agreement exists.

In determining whether an enforceable settlement agreement exists, the Court must resolve two legal questions: first, whether counsel had "clear and unequivocal authority" to enter into a binding settlement agreement; and second, whether a binding agreement was reached under principles of contract law. *Vital Pharm., Inc. v. S.A.N. Nutrition Corp.*, 06–60646–CIV–COHN, 2007 WL 1655421, at *4 (S.D. Fla. June 6, 2007); *see also U.S. Commodity Futures Trading Comm'n v. Vision Fin. Partners, LLC*, 232 F. Supp. 3d 1287, 1292 (S.D. Fla. 2017). Here, the

Parties stipulated to their authority to enter into the joint settlement agreement. Section 3 of the agreement states:

> Defendant represents and warrants that, upon approval of this agreement by the Miami-Dade Board of County Commissioners, it has full power and authority to enter into and deliver this Agreement on behalf of itself and any affiliated Persons, and the individual signing this Agreement on behalf of Defendant has been fully authorized to do so by the Board of County Commissioners. Ex. 1 at 20.

Further, Exhibit 1 of the parties' filing on June 16, 2021 includes a signed Resolution from the Board of County Commissioners approving the settlement with Plaintiffs. *Id.* at 1-11. As such, it is clear that counsel had the clear and unequivocal authority to enter into a binding settlement agreement, and did so. With regard to whether a binding agreement was reached, courts look to traditional notions of offer and acceptance, and basic contract law, to determine whether an enforceable contract exists. "Settlement agreements are highly favored, and will be enforced whenever possible." *Vital Pharm., Inc. v. S.A.N. Nutrition Corp.*, at *6. Here, an enforceable settlement agreement exists, and because Defendant is in breach of it, the Court should enforce that agreement.

### d. Defendant is in breach of the Parties' agreement.

#### i. Defendant is in breach of Section 1.1.

Under Section 1.1 of the parties' joint settlement agreement, Defendant is to establish a standardized method of communication between Defendant and the Public Defender, allow the Public Defender to timely interview individuals for whom ICE has submitted a detainer request, and release incarcerated individuals upon receipt of evidence from the Public Defender that a person falls within an exemption to the detainer law. *Id.* at 14-16. For well over a year, Defendant has been in breach of those agreements. As described above, Defendant has ceased all communication with the Public Defender in response to Declarations. Given that the last

communication received from Corrections about whether they were processing ICE Detainer Exemption requests was July 19, 2022, *see* Ex. 4 (E-mail from Trisha Pasdach to Miriam Haskell, Dated May 23, 2023), and knowing that ongoing attempts to communicate with Corrections will be fruitless, the Public Defender has stopped sending Declarations to Corrections. As a result, noncitizens who qualify under the victim or witness exemptions and would otherwise be released are being transferred into ICE custody. To Plaintiffs' knowledge, no person has been released under the settlement since approximately June 2022.[2] *See supra* I(c). Defendant is in direct breach of the parties' joint settlement agreement by failing to comply with these covenants, and Defendant has been unresponsive to requests for additional information about compliance. Counsel for Defendants have repeatedly deflected responsibility by asking Counsel for Plaintiffs to obtain information from the Public Defender about its role in the Declaration process, *see* Ex. 6 (E-mails from Anita Viciana to Miriam Haskell, Dated April 19, 2023 and May 3, 2023) when the root of the noncompliance is within *their* client's control.

### ii. Defendant is in breach of Section 1.5.

Similarly, Defendant is in breach of Section 1.5 of the parties' joint settlement agreement, which creates biannual reporting requirements for Defendant at Plaintiffs' request. One such report was prepared and shared with Plaintiffs in December 2021. Since that time, despite Plaintiff's multiple requests, most recently in April and May 2023, *see* Ex. 4; 5, Defendant has not produced any reports. Defendant is in direct breach of the parties' joint settlement agreement by failing to comply with these covenants and has been unresponsive to requests for additional information about their compliance.

---

[2] Plaintiffs' knowledge about this question is limited because of Defendant's actions and lack of communication with Plaintiffs.

12

Further, Defendant may be in breach of other sections of the agreement beyond Sections 1.1 and 1.5, but Defendant's failure to provide the required six-month reports and refusal to communicate with Plaintiffs regarding compliance with the agreement limits Plaintiffs' ability to address other concerns.

### e. Plaintiffs are entitled to attorneys' fees.

Further, the Court should award Plaintiffs attorneys' fees and costs incurred in attempting to enforce the agreement and time spent litigating this Motion.

Attorneys' fees can be awarded if there is a contractual basis for them. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257-59 (1975) (noting that exceptions to the "American Rule" that prevailing party is not entitled to attorneys' fees include the existence of an enforceable contract). Principles governing general contract law apply to interpret settlement agreements, *Schwartz v. Florida Bd. of Regents,* 807 F.2d 901, 905 (11th Cir. 1987), and the "interpretation of private contracts is ordinarily a question of state law." *Chem. Bank v. First Trust of N.Y.* (*In re Se. Banking Corp.*), 156 F.3d 1114, 1121 (11th Cir.1998) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 60 n. 4 (1995)); *see also U.S. ex rel. Osheroff v. MCCI Grp. Holdings, LLC*, No. 10-24486-CV-SCOLA, 2013 WL 3991964, at *3 (S.D. Fla. Aug. 2, 2013) ("Ordinarily, state contract law applies to the interpretation and enforceability of settlement agreements, even where the underlying lawsuit arises under federal law.") In addition to the general presumption that state law is applicable in the interpretation and enforcement of settlement agreements, the parties to this case agreed, in Section 9 of the agreement, that the agreement should be interpreted in accordance with Florida law. *See* ECF No. 119, Ex. 1 at 22. As such, Florida state contract law directs this Court's analysis in interpreting the agreement.

Under Florida law, parties who breach contracts have been held responsible for paying the non-breaching party attorneys' fees. *See Capitol Env't Servs., Inc. v. Earth Tech, Inc.*, 25 So. 3d 593, 596 (Fla. Dist. Ct. App. 2009) (holding that "it is well-settled that the injured party in a breach of contract action is entitled to recover monetary damages that will put it in the same position it would have been had the other party not breached the contract" and finding trial court did not err in awarding attorneys' fees). Additionally, in Section 11 of the agreement, the parties in this case agreed to award attorneys' fees and costs of Court to the prevailing party in any proceeding arising out of this agreement. Ex 1 at 22. Given that these are binding contractual provisions, this Court must enforce them. *Jacobson v. Jacobson*, 595 So. 2d 292, 294 (Fla. Dist. Ct. App. 1992) ("A court has no discretion to decline to enforce contractual provisions for an award of prevailing party attorney's fees any more than any other valid contractual provision."). Given the above, Plaintiffs respectfully request that this Court award attorneys' fees and costs of Court.

### III. CONCLUSION AND REQUEST FOR HEARING

For the reasons set forth above, Plaintiffs request that the Court grant this motion to enforce the parties' agreement and award Plaintiffs attorneys' fees, and any other relief the Court deems just and proper. Plaintiffs respectfully request that the Court schedule a hearing on this Motion at the Court's earliest convenience so that these issues may be promptly and completely addressed.

Dated:  November 8, 2023             Respectfully submitted,

*/s/ Rachel Maremont*
Rachel Maremont (Ore. Bar No. 214454)*[3]
Rebecca Sharpless (Fla. Bar No. 0131024)
rsharpless@law.miami.edu
**IMMIGRATION CLINIC**
**UNIVERSITY OF MIAMI SCHOOL OF LAW**

---

[3] Ms. Maremont's Motion to Appear Pro Hac Vice was approved on November 1, 2023. ECF No. 152.

1311 Miller Drive, Suite E-273
Coral Gables, FL 33146
Tel: (305) 284-3576
Fax: (305) 284-6092

Miriam Haskell (Fla. Bar No. 06995)
miriam@communityjusticeproject.com
Alana Greer (Fla. Bar No. 92423)
alana@communityjusticeproject.com
**COMMUNITY JUSTICE PROJECT, INC.**
3000 Biscayne Blvd. Suite 106
Miami, Florida 33137
Tel: (305) 907-7697

Edward Soto (Fla. Bar No. 0265144)
edward.soto@weil.com
Pravin R. Patel (Fla. Bar No. 0099939)
pravin.patel@weil.com
Corey D. Berman (Fla. Bar No. 0099706)
corey.berman@weil.com
Nicole Comparato (Fla. Bar No. 0293239)
nicole.comparato@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Fax: (305) 374-7159

*Counsel for Plaintiffs*

## CERTIFICATE OF CONFERENCE

The parties have been in communication regarding the issues raised in this Motion for several months, as noted *supra* at I(e). Plaintiffs informed Defendant on November 7, 2023, they would be filing this Motion on November 8, 2023. Defendant is opposed to the relief sought in this Motion.

/s/ *Rebecca Sharpless*
Rebecca Sharpless (Fla. Bar No. 0131024)
rsharpless@law.miami.edu
**IMMIGRATION CLINIC**
**UNIVERSITY OF MIAMI SCHOOL OF LAW**
1311 Miller Drive, Suite E-273
Coral Gables, FL  33146
Tel: (305) 284-3576
Fax: (305) 284-6092

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

*/s/ Rebecca Sharpless*
Rebecca Sharpless (Fla. Bar No. 0131024)
rsharpless@law.miami.edu
**IMMIGRATION CLINIC**
**UNIVERSITY OF MIAMI SCHOOL OF LAW**
1311 Miller Drive, Suite E-273
Coral Gables, FL  33146
Tel: (305) 284-3576
Fax: (305) 284-6092

*Counsel for Plaintiffs*