UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| C.F.C., individually and on behalf of those similarly situated; S.C.C., individually and on behalf of those similarly situated; WECOUNT!, INC., a Florida not for profit corporation; FLORIDA IMMIGRANT COALITION, INC., a Florida not for profit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL JUNIOR, in his official capacity as Director of the Miami-Dade Corrections and Rehabilitation Department,<br><br>Defendant. | Civil Action No. 1:18-cv-22956 |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' SCHEDULE OF FEES**

Pursuant to the Court's direction, Plaintiffs respectfully submit this Reply to Defendant's Response in Opposition to Plaintiffs' Supplemental Schedule of Fees (DE 239).

The interests of Plaintiffs and their counsel have always been in securing the rights of individuals eligible for release under the Partial Settlement Agreement ("the Agreement") (DE 119-1). Defendant's inaction and unresponsiveness—once called "deafening" by this Court and by now documented in multiple filings and testimony—has forced Plaintiffs' counsel to devote considerable time and resources to this matter. The aspersions Defendant casts on the character of Plaintiffs and their counsel (accusing Plaintiffs' counsel of converting this matter into "a fee-generating structure" (DE 239 at 2)) could not be further from the truth. In fact, neither the University of Miami School of

1

Law Immigration Clinic ("the Immigration Clinic") nor the Community Justice Project historically rely on attorneys' fees to pay for their work; rather, they are entitled to attorneys' fees in this matter because they represent the prevailing parties.

Notably, Plaintiffs submitted their *complete* Schedule of Fees (DE 208-1) and Supplemental Schedule of Fees (DE 233-1) at the direction of the Court and without a corresponding motion or filing explaining further entitlement or billing judgment exercised. The Parties were not directed to enter into the process outlined in Local Rule 7.3 regarding Attorneys' Fees; Plaintiffs were directed to submit only a complete schedule of fees and then a supplemental schedule of fees through June 2024. Defendant was not directed to respond to either schedule of fees and never conferred with Plaintiffs or sought leave of Court prior to filing responses, in violation of the Court's April 23, 2024 Order.[1] "The determination of reasonable attorneys' fees is left to the sound discretion of the trial judge." *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1187 (11th Cir. 1983) (citations omitted).

**I.      Plaintiffs are entitled to attorneys' fees.**

  **a. As the prevailing party, Plaintiffs are entitled to attorneys' fees.**

As Defendant recognizes, Section 11 of the Agreement confirms that the prevailing party in litigation related to enforcement is entitled to attorneys' fees. (DE 119-1.) Plaintiffs are entitled to recover fees for the entirety of their work on the complex and lengthy issues related to seeking

---

[1] As Plaintiffs have noted on numerous occasions, Defendant has repeatedly and blatantly ignored the orders of this Court. Defendant ignored the December 1, 2024 Order regarding processing Exemption Declarations under the "protocol previously used" for months, as well as the April 10, 2024 Order requiring Defendant to respond to 44 outstanding declarations of applicable exemptions to ICE detainers. On April 23, the Court outlined specific instructions for the Parties to confer prior to filing any documents. (DE 203.) Despite that, Defendant failed to confer with Plaintiffs or seek leave of Court prior to filing his initial opposition to fees. With his latest opposition, Defendant again flouted the orders of this Court by ignoring the April 23 Order intended to encourage communication between the Parties by filing a second opposition without leave of Court or conferring with Plaintiffs.

Defendant's compliance with the Agreement. As such, Defendant's argument that Plaintiffs should not recover "for time spent that did not contribute to any resolution of the issues presented" (DE 213 at 3) fails for multiple reasons. First, Defendant has neglected even to identify specifically which time entries he refers to with this statement. Second, Defendant has not argued *why* these time entries did not contribute to the resolution of this matter—arguments that would likely fail, given that they would necessarily ignore the complexity and scope Plaintiffs' efforts to seek enforcement of the Agreement. Third, and most importantly, Defendant misstates the law (without citing any legal authority) in arguing that Plaintiffs must separate out their work according to alleged successes and failures. "The theory that fee applications should be dissected into 'winning' and 'losing' hours with the latter being non-reimbursable contradicts the law of this circuit." *Dowdell*, 698 F.2d at 1187. In litigation that could be more simply parsed out than this (for example, where a plaintiff brings four very distinct claims and succeeds in two), the Supreme Court has recognized that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 440 (1983) (where unsuccessful claims are "distinct in all respects from [the] successful claims," time can be reduced). This matter is harder to parse, however, as it is particularly difficult to divide into "unsuccessful" and "successful" claims. *See Turner v. Orr*, 785 F.2d 1498, 1504 (11th Cir. 1986). For these reasons, Plaintiffs are entitled to fees for all recoverable work spent litigating the issues outlined in the motions to enforce compliance. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435.

II.     **Plaintiffs have submitted an appropriate and justified schedule of fees.**

Defendant seeks to subject Plaintiffs' fee schedule to a legal process while himself failing to comply with this District's stated process for adjudicating and awarding fees. Defendant has failed to make a good-faith effort to identify allegedly problematic billing entries with specificity, making it impossible for Plaintiffs to respond with specificity. *See Local Rule 7.3(b)* (requiring objections to be described "with reasonable particularity."). Despite Defendant's lack of specificity (and while acknowledging that the all Parties are operating outside of a clear process), Plaintiffs have attempted to respond to Defendant's general objections below.

a. **Plaintiffs' counsel have properly billed for their time.**

Defendant's definition of improper "double billing" is impossibly broad and appears to apply simply to any work entry where more than one attorney is present, regardless of whether each attorney was necessary to the work. For example, it would include two attorneys billing for work done when meeting with each other or when communicating with each other about issues critical to advancing this enforcement action. The mere presence of two attorneys in a meeting, on a communication chain or even in a court hearing does not inherently render that occurrence improper double billing. Notably, Defendant argues that it does, without citing any authority in support of his position.

Double or duplicative billing refers to one lawyer billing twice for the same work or event. *See Jiangmen Benlinda Printed Cir. Co., Ltd. v. Circuitronix, LLC*, 2024 WL 3204361 at *5 (S.D. Fla. 2024) (Goodman, Mag. J.), *adopted* 2024 WL 3201196 (S.D. Fla. 2024), *Christopher v. Residential Realty Servs. Corp.*, 2022 WL 625347 at *5 (S.D. Fla. 2022) (Valle, Mag. J.), *adopted* 2022 WL 625044 (S.D. Fla. 2024), *Godoy v. New River Pizza, Inc.*, 565 F. Supp. 2d 1345 at 1348 (S.D. Fla. 2008) (one attorney including two identical billing entries). In his

objections, Defendant does not point out any specific examples of double-billing, but generally references ever single page of Plaintiffs' fee schedules. Instead (and without specificity), Defendant complains about Plaintiffs' counsel communicating with each other via email or text messages and traveling to court hearings, without offering any legal support for why those are unacceptable entries.

These are not presumptively improper examples of double billing. Because of the relatively speedy and time-sensitive nature of a motion to enforce, once filed, Plaintiff's counsel had to complete significant amounts of work during a relatively short period of time. This necessitated multiple attorneys at times sharing in the case load. *See Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir. 1983) (use of "a team of attorneys who divide up the work is common" and "not a ground for reducing the hours claimed"). Counsel participated in notably distinct tasks. For example, Miriam Haskell did not typically conduct any of the direct supervision of the screening process, which was handled primarily by Rachel Maremont and sometimes Rebecca Sharpless. In hearings where Ms. Haskell led the legal argument for Plaintiffs, Ms. Maremont or Ms. Sharpless offered critical counseling and data regarding the screening and status of detained individuals.

If the Court seeks to account for the arguably (though not presumptively) redundant work of more than two attorneys participating in status conferences, the Court could seek a small reduction in the fees sought by Plaintiffs; however, the 85 percent reduction suggested by Defendant is obscenely high and without legal support. "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not *unreasonably* doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) (emphasis added).

### b. Plaintiffs are entitled to fees for work incurred as early as August 2022, as well as after April 7, 2024.

As Defendant points out, Plaintiffs submitted billing entries dating back to August 2022. This is because Plaintiffs began then to assess and confer regarding Defendant's lack of compliance. Indeed, one of the August 2022 billing entries for Ms. Haskell is "Emailing with [Ms. Sharpless] re [Defendant's] failure to respect Public Defender statements re victim exception, *lack of compliance with settlement terms*." (emphasis added). Time spent conferring regarding non-compliance is appropriately billed when seeking fees for a motion to enforce. Defendant makes no substantive argument to the contrary, and complains only that the work occurred too long ago. As Plaintiffs have noted many times to the Court, Plaintiffs made considerable and often unreciprocated efforts to communicate with Defendant prior to filing the Motion to Enforce, many unresponded to, over the course of a long period of time. Now, Defendant seeks to be rewarded for his delays by penalizing Plaintiffs for attempting to resolve this matter prior to filing their motion.

Defendant also complains that Plaintiffs should not be compensated for work dated after April 7, 2024, when Defendant was purportedly in compliance with the Agreement. This alleged compliance has not yet been established. Moreover, Defendant fails to acknowledge that in addressing the Parties with regard to the imminent fee order, *this Court* directed Plaintiffs to submit work through June 2024.[2] Defendant made no objection or argument concerning that date at that time. Moreover, even if the Court were to consider the new Public Defender screening process to be compliant with the Agreement, Defendant ignores that this process was not in place by April 7.

---

[2] Plaintiffs have incurred fees for work after June 2024, including work related to completing the evidentiary hearing in this matter, but sought to comply with the Court's direction and limit recoverable time to the end of June 2024.

Testimony solicited in the evidentiary hearing demonstrated that the Public Defender screening process did not start until well after April 7; indeed, a supplemental memo describing the new Public Defender screening process actually went out to staff a full month later, and that is when related training occurred. *See* Testimony of Carlos Martinez and Trisha Pasdach, Evidentiary Hearing on Motion to Enforce (June 24, 2024). Defendant argues that he was in full compliance with the Agreement as of April 7, despite being well-aware that evidence and testimony demonstrates otherwise.

### c. Plaintiffs are entitled to attorneys' fees for screening work completed by the University of Miami Immigration Clinic.

Plaintiffs are entitled to recover for the screening work of the Immigration Clinic that was made necessary by the actions—or inactions—of Defendant. As Plaintiffs have previously argued, but for Defendant's failure to comply with the Agreement, the Public Defender would not have stepped away from its role, and the Immigration Clinic would not have had to substitute in for the Office of the Public Defender. As a result of Defendant's noncompliance, Plaintiffs have submitted hours incurred by Ms. Sharpless, Ms. Maremont, paralegal staff and a single law clerk who performed legal work (primarily, communication with counsel at the Office of the Public Defender regarding planned interviews).[3]

In an exercise of billing judgment, Plaintiffs excluded the dozens of hours incurred by multiple law clerks who interviewed incarcerated individuals through the University of Miami Immigration Clinic's screening program. Plaintiffs also did not claim costs, including the significant costs associated with preparing for multiple dates of evidentiary hearings.

---

[3] Neither Plaintiffs, Plaintiffs' counsel or employees of the Immigration Clinic have made the argument that the Immigration Clinic would be entitled to ongoing financial payment for work moving forward, if the Immigration Clinic continues to screen individuals through a program worked out between the Parties or ordered by the Court.

### III. Defendant has been aware of Plaintiffs' rates and projected bills since early in this enforcement action, and Plaintiffs' rates are justified.

Early in the litigation of the first Motion to Enforce in this matter and at the suggestion of the Court, Plaintiffs contacted Defendant to confer regarding attorneys' fees. On December 28, 2023, Plaintiffs' counsel emailed counsel for Defendant with a breakdown of fees incurred by that date ($54,835) and related rates. While counsel for Defendant conveyed that she would forward the information to her client, Plaintiffs never received a response regarding the amount of fees sought at that stage—or, notably, an objection to the stated rates.

Defendant accuses Plaintiffs of failing to demonstrate that their hourly rates were reasonable, but Plaintiffs were not directed at any point to justify the fees they sought, simply to submit a schedule of fees to the Court. Plaintiffs submitted a range of fee rates because of the unique position they are in with this matter—a team built of attorneys including those at a private firm, *who have billed here at the rate at which they bill regularly* (i.e., the market rate that Defendant argues should be the anchor). Notably, those attorneys represent a small portion of the work outlined in the fee schedules. As with the rest of Defendant's general objections, Defendant does not specifically identify any problematic rates, leaving Plaintiffs unsure which rates Defendant believes are too high and of the reasons why.

### IV. Conclusion

Plaintiffs have sought to negotiate fees, as early as December 2023 and as recently as last week, but been unsuccessful thus far. Defendant's suggestion that the Court cut Plaintiffs' time by 85 percent is unsupported by his arguments and extreme. This, combined with Defendant's repeated aspersions against Plaintiffs' counsel and Defendant's ongoing failure to comply with court orders, demonstrate once again that Defendant is not sincerely interested in fairly resolving this matter and has not made a good-faith attempt to do so. Plaintiffs respectfully request that this

Court enter a fee order for the full amount of fees sought by Plaintiffs, as outlined in their Schedule of Fees and Supplemental Schedule of Fees.

Dated: August 27, 2024

Respectfully submitted,

*/s/ Miriam Haskell*
Miriam Haskell (Fla. Bar No. 69033)
miriam@communityjusticeproject.com
Alana Greer (Fla. Bar No. 92423)
alana@communityjusticeproject.com
**COMMUNITY JUSTICE PROJECT, INC.**
3000 Biscayne Blvd. Suite 106
Miami, Florida 33137
Tel: (305) 907-7697

Rebecca Sharpless (Fla. Bar No. 0131024)
rsharpless@law.miami.edu
**IMMIGRATION CLINIC**
**UNIVERSITY OF MIAMI SCHOOL OF LAW**
1311 Miller Drive, Suite E-273
Coral Gables, FL 33146
Tel: (305) 284-3576
Fax: (305) 284-6092

*Counsel for Plaintiffs*