**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 18-22956-CV-WILLIAMS**

C.F.C., *et al.*,

      Plaintiffs,

v.

DANIEL JUNIOR,[1]

      Defendant.

_____/

## ORDER

**THIS MATTER** is before the Court on the Motion to Dismiss the Third Amended Complaint ("***Defendant's MTD***" or "***Motion to Dismiss***") (DE 129) filed by Defendant Daniel Junior ("***Defendant***"); the Motion for Summary Judgment ("***Plaintiffs' MSJ***") (DE 134) filed by Plaintiffs C.F.C., S.C.C., WeCount!, Inc. ("***WeCount!***"), and Florida Immigrant Coalition, Inc. ("***FLIC***") (collectively, "***Plaintiffs***"); the Motion for Summary Judgment filed by Defendant ("***Defendant's MSJ***") (DE 137); and Plaintiffs' Amended Motion to Enforce Partial Settlement Agreement and Request for Attorneys' Fees ("***Motion for Attorneys' Fees***") (DE 211). Each of these motions is fully briefed and ripe for review. For the reasons that follow, and as announced in open court on April 10, 2025 (DE 259): (1) Defendant's MTD is **DENIED**, (2) Plaintiffs' MSJ is **DENIED**, (3) Defendant's MSJ is **GRANTED,** and (4) Plaintiffs' Motion for Attorneys' Fees is **GRANTED IN PART**.

---

[1] Daniel Junior is no longer the Director of the Miami-Dade Corrections and Rehabilitation Department. Pursuant to Federal Rule of Civil Procedure 25(d), Sherea Green, appointed Director on November 13, 2023, is automatically substituted as Defendant. For the purposes of clarity and consistency, the Court continues to refer to Daniel Junior by name in this Order.

## I.    BACKGROUND

### A. *Immigration Detainer Requests*

The above-captioned case, alleging a Fourth Amendment violation pursuant to 42 U.S.C. § 1983 ("**Section 1983**"), arises from the honoring of and processing by Miami-Dade County, Florida of immigration detainer requests issued by U.S. Immigration and Customs Enforcement ("**ICE**"), which is an agency of the U.S. Department of Homeland Security ("**DHS**").[2]

Section 103 of the federal Immigration and Nationality Act ("**INA**"), codified at 8 U.S.C. § 1103, authorizes the Secretary of Homeland Security ("**Secretary**") to "establish such regulations[] . . . and perform such other acts as [they] deem[] necessary for carrying out [their] authority" to administer and enforce the INA and "all other laws relating to the immigration and naturalization of aliens . . . ."[3] 8 U.S.C. § 1103(a)(1), (3). Pursuant to that authority, the Secretary has promulgated regulations that allow ICE to issue detainers to other law enforcement agencies, including local police departments. 8 C.F.R. § 287.7(a) states:

> Detainers are issued pursuant to [the INA] . . . . Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action [(*see* DE 136-1)], to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that [DHS] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for [DHS] to arrange to assume custody, in situations when gaining immediate physical custody is either

---

[2] In this Order, references to DHS's authority to, *inter alia*, commence proceedings, adjudicate cases, and execute removals incorporate the authority of its agencies to do the same thing.

[3] The sources of law discussed within this Order use a variety of terms, including "alien," to describe a noncitizen or foreign national in the United States. *See* 8 U.S.C. § 1101(a)(3) (defining the term "alien"). For clarity and consistency, when not quoting a source, the Court will use the term "noncitizen" throughout this Order.

impracticable or impossible.

Under the regulations, when ICE issues a detainer related to an individual in custody of, but not otherwise legally detained by another law enforcement agency, "such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody" by ICE. 8 C.F.R. § 287.7(d).

While ICE has issued detainer requests to local law enforcement agencies for years, federal regulations make clear that "[n]o [ICE] detainer [request] issued . . . shall incur any fiscal obligation on the part of [DHS], until actual assumption of custody by [DHS]," unless ICE issued a detainer for a noncitizen "not otherwise detained by a criminal justice agency . . . ." 8 C.F.R. § 287.7(d)–(e). On December 3, 2013, the Miami-Dade Board of County Commissioners ("**County Commissioners**") adopted Resolution No. R-1008-13, directing the Mayor of Miami-Dade County, Florida to honor ICE detainer requests "only if the federal government agreed to reimburse Miami-Dade County for the costs of detention and the inmate that is the subject of the request has a previous conviction for a forcible felony or has a pending charge of a non-bondable offense[.]" (DE 1-3 at 4.)

On January 25, 2017, President Donald J. Trump issued Executive Order 13768 ("**EO 13768**"), which stated in relevant part that the Secretary of Homeland Security should prioritize the removal of noncitizens who, *inter alia*, have committed chargeable criminal offenses, have been charged with unresolved criminal offenses, or who have been convicted of any criminal offenses. Exec. Order 13768, 82 Fed. Reg. 8799 (Jan. 25, 2017). EO 13768 stated that the Executive Branch should "[e]nsure the faithful execution

of the immigration laws of the United States, including the INA, against all removable aliens . . . . [and] [e]nsure that jurisdictions that fail to comply with applicable Federal law do not receive Federal funds, except as mandated by law[] . . . ." *Id.*

In response to EO 13768, then-Mayor of Miami-Dade County Carlos Gimenez issued a memorandum to Defendant, in his capacity as Director of Miami-Dade County's Corrections and Rehabilitation Department ("***MDCR***"), on January 26, 2017. The memorandum stated as follows:

> Yesterday, January 25, 2017, President Donald J. Trump issued Executive Order: Enhancing Public Safety in the Interior of the United States. In light of the provisions of the Executive Order, I direct you and your staff to honor all immigration detainer requests received from the Department of Homeland Security. Miami-Dade County complies with federal law and intends to fully cooperate with the federal government. I will partner with the Board of County Commissioners to address any issues necessary to achieve this end.

(DE 1-2 at 2 (emphasis added).)

In February 2017, the County Commissioners adopted, and former Mayor Gimenez approved, Resolution No. R-163-17, which directed the Mayor to "no longer require the federal government to reimburse Miami-Dade County for any and all costs relating to compliance with ICE detainer requests." (DE 1-3 at 7.) The Resolution also reaffirmed the County's position that, "with respect to immigration detainer requests, [the] County remains fully compliant with the United States Constitution and all applicable federal laws[.]" (*Id.*) Additionally, the Resolution directed the Mayor to "continue[] to require the federal government to show probable cause on all immigration detainer requests[.]" (*Id.*)

Since Plaintiffs initiated this litigation, there have been a number of developments regarding federal immigration detainers, four of which bear discussion. First, on May 2,

2019, the Florida Legislature enacted Senate Bill 168 ("**SB 168**"), which Governor Ron

DeSantis later signed into law. (DE 129 at 1; DE 134 at 13; DE 136 ¶¶ 14–15.) Codified

at Chapter 908 of the Florida Statutes, SB 168 states in relevant part that "[a] law

enforcement agency that has custody of a person subject to an immigration detainer

issued by a federal immigration agency shall: (a) [p]rovide to the judge authorized to grant

or deny the person's release on bail under [C]hapter 903 notice that the person is subject

to an immigration detainer[;] (b) [r]ecord in the person's case file that the person is subject

to an immigration detainer[;] [and] (c) [u]pon determining that the immigration detainer is

in accordance with [Section] 908.102(2), comply with the requests made in the

immigration detainer." Fla. Stat. § 908.105(1)(a)–(c); (*see also* DE 136-5 at 5.) Section

908.102(2) defines an "immigration detainer" as "a facially sufficient written or electronic

request issued by a federal immigration agency using that agency's official form to

request that another law enforcement agency detain a person based on probable cause

to believe that the person to be detained is a removable alien under federal immigration

law, including detainers issued pursuant to 8 U.S.C. [§§] 1226 and 1357 along with a

warrant described in paragraph (c)."[4] Fla. Stat. § 908.102(2); (*see also* DE 136-5 at 2.)

---

[4] Under Florida law, an immigration detainer is "facially sufficient" if: (a) "[t]he federal immigration agency's official form [*i.e.*, Form I-247 (*see* DE 136-1)] is complete and indicates on its face that the federal immigration official has probable cause to believe that the person to be detained is a removable alien under federal immigration law"; *or* (b) "[t]he federal immigration agency's official form is incomplete and fails to indicate on its face that the federal immigration official has probable cause to believe that the person to be detained is a removable alien under federal immigration law, but is supported by an affidavit, order, or other official documentation that indicates that the federal immigration agency has probable cause to believe that the person to be detained is a removable alien under federal immigration law"; *and* (c) "[t]he federal immigration agency supplies with its detention request a Form I-200 Warrant for Arrest of Alien or a Form I-205 Warrant of Removal/Deportation or a successor warrant or other warrant authorized by federal law." Fla. Stat. § 908.102(2)(a)–(c); (*see also* DE 136-5 at 2.)

Second, a group of plaintiffs—including Plaintiffs here, WeCount! and FLIC—challenged the constitutionality of numerous provisions of SB 168 in *City of South Miami v. DeSantis*, 408 F. Supp. 3d 1266 (S.D. Fla. 2019). They argued in relevant part that Florida was both field preempted and conflict preempted by the INA from enacting and implementing Section 908.105's requirement that state and local law enforcement officials comply with federal immigration detainer requests. *Id.* at 1296–97. The court in *City of South Miami* found that Section 908.105 was neither field preempted nor conflict preempted by federal law, because "the [d]etainer [m]andate . . . is contingent upon the receipt of a detainer request issued by an authorized federal immigration officer that indicates the federal officer has probable cause to believe that the detainee is unlawfully in the United States," *id.* at 1297, 1301, thus falling within the scope of the INA's cooperation clause.[5] *See* 8 U.S.C. § 1357(g)(10)(B) ("Nothing in this subsection [regarding the powers of immigration officers to, *inter alia*, issue detainer requests] shall be construed to require an agreement under this subsection in order for any officer or employee of a State [to] . . . cooperate with the [U.S.] Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.").

The court in *City of South Miami* acknowledged "the body of case law across the nation that has determined that these immigration detainer holds are unconstitutional

---

[5] Subsequent to this ruling in *City of South Miami*, the case proceeded to a bench trial on separate issues—whether the best-efforts provision and sanctuary cities provisions of SB 168 violated the Equal Protection Clause because they resulted in a racially disparate impact and were enacted with discriminatory intent. The Eleventh Circuit vacated the district court's judgment on these issues because it found that the organizational plaintiffs lacked standing. *See City of S. Miami v. Governor*, 65 F.4th 631, 634 (11th Cir. 2023). The Eleventh Circuit did not opine on the Fourth Amendment analysis set forth by the district court. *Id.*

subsequent arrests in violation of the Fourth Amendment, two of which are in this District."
*City of South Miami*, 408 F. Supp. 3d at 1298. Plaintiffs had relied on many of those cases
for their preemption arguments, but those cases "concerned post-enforcement Fourth
Amendment challenges to detainer holds, not a pre-enforcement facial challenge to a
state statute mandating local officers' compliance with detainer requests." *Id*. The court
found that distinction to be critical, as there is an exacting standard to satisfy in bringing
a pre-enforcement facial challenge. *Id*. Specifically, Plaintiffs "must establish that the
mandate is unconstitutional in all of its applications." *Id*. (quoting *Creedle v. Miami-Dade
Cty.*, 349 F. Supp. 3d 1276, 1298 (S.D. Fla. 2018) (quoting *City of El Cenizo, Texas v.
Texas*, 890 F.3d 164, 187 (5th Cir. 2018))). Moreover, the *City of South Miami* court
distinguished the cited cases based on the fact that those cases "did not address the
situation where a detainer request was issued alongside an administrative warrant
alleging probable cause." *Id*. at 1299. The court concluded that "[t]he combination of the
detainer and the administrative warrant rectify many of the [Fourth Amendment] issues
presented in those prior cases." *Id*. Specifically, Plaintiffs failed to establish that every
seizure authorized by SB 168 would violate the Fourth Amendment because the "current
detainer practice and the mandates of SB 168 require that all detainer requests be
accompanied by administrative warrants." *Id*. at 1300.

Third, the Eleventh Circuit discussed the standard for analyzing a Fourth
Amendment claim based on a detention pursuant to an immigration hold in *Alcocer v.
Mills*, 906 F.3d 944 (11th Cir. 2018) ("**Alcocer I**") and *Alcocer v. Mills*, 800 F. App'x 860
(11th Cir. 2020) ("**Alcocer II**") (collectively "**Alcocer**"). In *Alcocer I*, after being arrested
for driving with a suspended license and satisfying bond requirements for release, the

plaintiff remained detained in the Bulloch County jail because the jailer suspected that the plaintiff was present in the United States illegally, based on a fax received from ICE indicating that the plaintiff may have been subject to removal proceedings. 906 F.3d at 948–49. Despite not having a formal detainer request nor an administrative warrant from ICE, and despite plaintiff's sister's attempts to provide jail staff with evidence of plaintiff's U.S. citizenship, defendant jail employees continued to hold plaintiff. *Id.* at 949–51.

The plaintiff sued two employees of the Bulloch County jail, alleging violations of her Fourth and Fourteenth Amendment rights. *Id.* at 947–48. Analyzing whether plaintiff's claim properly arose under the Fourth or Fourteenth Amendment, the court described the proper Fourth Amendment standard in the context of an immigration hold as requiring that "any detention of a suspected alien 'must be based on consent or probable cause' that the person is, in fact, an alien." 906 F.3d 944 at 953 (quoting *Brignoni-Ponce*, 422 U.S. 873, 881–82 (1975)); *see also id.* ("So if the Fourth Amendment governs the analysis here . . . [defendants] must show they had probable cause . . . to believe that [plaintiff] was illegally present in the United States."). Following remand, the parties appeared before the Eleventh Circuit again in *Alcocer II*. 800 F. App'x at 861. In that subsequent review, the Eleventh Circuit reiterated the standard it set forth previously: that beyond a *Terry* stop, "the detention of a suspected alien 'must be based on consent or probable cause' that the person is, in fact, an alien." *Id.* at 865 (quoting *Brignoni-Ponce*, 422 U.S. at 881–82).

And finally, as part of a Partial Settlement Agreement (DE 119-1) reached by Plaintiffs and Miami-Dade County in this case, Plaintiffs agreed to "release and discharge the County from the causes of action set forth in all but one of the claims in their Second

Amended Complaint[.]" (DE 119-1 at 11); *see also infra* Section I.B. (discussing the counts of the Second Amended Complaint that Plaintiffs are no longer pursuing). In exchange for the dismissal and release, the County agreed to adopt screening and reporting processes meant to ensure compliance with Florida Statutes Section 908.105(c), which requires MDCR to determine that a detainer request is facially valid according to Section 908.102(2) before complying with the request, *see supra* p. 5, and to "honor protections" in Section 908.104 from enforcement of ICE-detainers against victims and witnesses of crimes "to the fullest extent permissible under the statute." (*Id.* at 15–20 (citing Fla. Stat. § 908.104); *see also infra* n. 18 (describing the subsequent litigation over Former Defendant Miami-Dade County's non-compliance with the Partial Settlement Agreement).)

### B. *The Instant Case*

On May 12, 2018, Plaintiff C.F.C., a resident of Miami-Dade County, was arrested for driving without a license and paid her bail on the same day. (DE 125 at 5.) Rather than be released, C.F.C. was re-arrested pursuant to an immigration detainer request form issued by ICE. (*Id.*) On June 6, 2018, Plaintiff S.C.C., a resident of Miami-Dade County at the time of filing this action, was arrested for driving with a suspended license and driving without a valid license. (*Id.* at 4; *see also* DE 22 at 15.) After S.C.C. paid his bail several weeks later, he also was re-arrested pursuant to an ICE detainer. (DE 125 at 4–5.)

As the Court has stated previously, the ICE detainers issued for both C.F.C and S.C.C. did not allege probable cause that they had committed a crime and did not constitute judicial warrants. (DE 38 at 3 (citing DE 22 at 3).) Instead, the ICE detainer

issued for S.C.C. stated that "[p]robable cause exists that [S.C.C.] is a removable alien . . . based on . . . [b]iometric confirmation of the alien's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law . . . ."[6] (DE 125-1 at 2.)

On July 20, 2018, Plaintiffs initiated the above-captioned case against former Defendants Miami-Dade County, Florida and MDCR (collectively, "***the Former Defendants***"). (DE 1.) Plaintiffs C.F.C. and S.C.C., proceeding individually and as claimed representatives of a class of similarly-situated persons detained by MDCR pursuant to ICE detainers, brought suit along with nonprofit organizations WeCount! and FLIC pursuant to 42 U.S.C. § 1983 ("***Section 1983***"), the Florida Constitution, and Florida state law, challenging Miami-Dade County's alleged policy and practice of arresting people based on ICE detainer requests. (*Id.* at 1.)

In the initial Complaint, Plaintiffs sought certification of a class of certain individuals arrested by MDCR on ICE detainers ("***Proposed ICE Detainer Class***") and brought five counts against the Former Defendants. (DE 1 ¶ 107.) Pursuant to Section 1983, Count I alleged that the Former Defendants violated Plaintiffs' Fourth Amendment rights by arresting C.F.C., S.C.C., and other similarly-situated individuals on ICE detainers not supported by appropriate probable cause. (*Id.* ¶¶ 129–137.) As to Count I, Plaintiffs requested damages and an injunction "enjoining [the Former Defendants] from detaining individuals pursuant to ICE detainer requests, without a judicial warrant[] or without

---

[6] Plaintiffs did not attach the ICE detainer issued for C.F.C. to the Third Amended Complaint. However, the Court assumes for purposes of ruling on the instant Motion that C.F.C.'s detainer form was substantively identical to the detainer issued for S.C.C. (*See* DE 38 at 3 n.1.)

probable cause that the detainee has committed a crime." (*Id.* at 33.) Count II alleged that the Former Defendants violated Plaintiffs' due process rights under the Fourteenth Amendment by falsely imprisoning C.F.C., S.C.C., and other similarly-situated individuals after they were entitled to release. (*Id.* ¶¶ 138–146.) Count III alleged unlawful imprisonment under Florida law. (*Id.* ¶¶ 147–155.) And Counts IV and V alleged violations of the Florida Constitution's provisions on unreasonable searches and seizures and due process. (*Id.* ¶¶ 156–167.) Plaintiffs later filed the First Amended Complaint advancing the same counts but proceeding against Miami-Dade County alone. (DE 22.)

After nearly three years of litigation[7] and settlement negotiations, on June 16, 2021, the Parties entered into a Partial Settlement Agreement as to Counts II, III, and IV of the Second Amended Complaint. (DE 119.) Consequently, only Count I remained at issue. Given the Parties' resolution of three counts, on July 2, 2021, and with leave of Court, Plaintiffs filed the operative Third Amended Complaint. (DE 125.)

In the Third Amended Complaint, Plaintiffs substituted Former Defendant Miami-Dade County for its employee, Defendant Junior, in his official capacity as MDCR's

---

[7] On September 24, 2018, Former Defendant Miami-Dade County filed Defendant's Motion to Dismiss the First Amended Complaint ("**First Motion to Dismiss**"). (DE 23.) On December 14, 2018, the Court entered the Order Granting in Part and Denying in Part the First Motion to Dismiss ("**Order on First Motion to Dismiss**"). (DE 38.) The Court permitted Counts I, III, and IV of the First Amended Complaint to proceed, but dismissed Counts II and V. (*Id.* at 19–46.) Subsequently, Plaintiffs filed a four-count Second Amended Complaint (DE 80). Count I again alleged a Fourth Amendment violation on behalf of Plaintiffs C.F.C., S.C.C., the Proposed ICE Detainer Class, WeCount!, and FLIC, and sought injunctive relief, incidental damages, and declaratory judgment. (*Id.* ¶¶ 141–150.) Count II alleged a Fourth Amendment violation on behalf of newly-added Plaintiff L.M.S., the newly-proposed Biometric Confirmation Subclass, WeCount!, and FLIC. (*Id.* ¶¶ 151–159.) Count III alleged unlawful imprisonment under Florida law (*id.* ¶¶ 160–168), while Count IV alleged a violation of the Florida Constitution's provision on searches and seizure. (*Id.* ¶¶ 169–75.)

Director. (*Id.* at 1.) In making this substitution, Plaintiffs assert the following:

> Director Junior is the proper defendant for this suit because he, acting personally in his official capacity and through the conduct of his employees, officers, agents, and servants, has acted under color of state law to direct MDCR officers to honor ICE detainer requests. These actions started with the County's enactment of a pro-detainer policy in 2017, and have since followed the Florida Legislature's passage of Senate Bill 168 in 2019, which directs law enforcement to honor ICE detainer requests. By substituting Dade County for Director Junior, in his official capacity as Director of MDCR, the Parties will be able to better address the narrow question of the constitutionality of the practice of honoring ICE detainer requests.

(DE 120 at 2–3.)

The Third Amended Complaint asserts only one claim for relief (Count I), alleging that Defendant violated Plaintiffs' Fourth Amendment rights by honoring ICE detainer requests without probable cause that a crime had been committed. (DE 125 ¶ 1 ("[T]he Defendant, acting in his official capacity as Director of the MDCR, directs the officers of the MDCR to jail people for 48 hours or more, even though all criminal charges against these persons have been dismissed, or they have been acquitted, ordered released, or have served their sentences . . . . violat[ing] the Fourth Amendment . . . ."); *id.* ¶ 5 ("The Defendant does not have independent authority to direct the arrest of individuals without a judicial warrant or probable cause that an individual has committed a crime . . . . [and] ICE detainer requests are neither judicial warrants nor supported by probable cause that an individual has committed a state law crime, [so] honoring ICE detainer requests violates an individual's Fourth Amendment rights.").) Plaintiffs allege that Defendant violated the Fourth Amendment rights of Plaintiffs C.F.C. and S.C.C. "by holding them past the point where they were entitled to lawful release." (*Id.* ¶ 120.) Plaintiffs aver that Defendant "has and will continue to unlawfully detain members of WeCount!, including but not limited to, Plaintiff C.F.C. . . . . [and] has and will continue to unlawfully detain

constituents of FLIC." (*Id.* ¶ 121.) Plaintiffs argue that "[b]ecause of [] Defendant's actions, Plaintiffs suffered and will continue to suffer violations of the Fourth Amendment." (*Id.* ¶ 122.) Ultimately, Plaintiffs ask the Court for "an injunction enjoining Defendant Daniel Junior, in his official capacity as Director of the MDCR, from directing the officers of the MDCR to honor ICE detainer requests generally," as well as for a judgment in Plaintiffs' favor, reasonable attorneys' fees and costs, and other equitable relief as the Court sees fit. (*Id.* at 23.)

On July 19, 2021, pursuant to the Sixth Amended Scheduling Order (DE 127), Defendant filed the instant Motion to Dismiss the Third Amended Complaint. (DE 129.) Plaintiffs responded in opposition and Defendant replied. (DE 130; DE 132.) Then, on August 30, 2021, Plaintiffs filed their Motion for Summary Judgment (DE 134), to which Defendant responded in opposition and Plaintiffs replied. (DE 140; DE 142.) On August 30, 2021, Defendant also filed his Motion for Summary Judgment (DE 137), to which Plaintiffs responded in opposition and Defendant replied. (DE 138; DE 143.) Accordingly, all three motions are now ripe before the Court.

## II.   LEGAL STANDARD

Given that this Order resolves both Defendant's MTD (DE 129) and the Parties' cross-motions for summary judgment (DE 134; DE 137), the corresponding legal standards are discussed below.

### A. *Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a defendant may move to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A complaint survives a Rule 12(b)(6) motion to dismiss

if it pleads sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage, all factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379–80 (11th Cir. 2010); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). Therefore, while a plaintiff need not provide "detailed factual allegations," their complaint must offer "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal quotations omitted). Further, "the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).

### B. *Motion for Summary Judgment*

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[O]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court must consider evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other

materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party . . . and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (internal quotations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "The inquiry at this stage by a district court is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Lake v. Nationwide Mut. Ins. Co.*, 2021 WL 2188488, at *4 (N.D. Ala. Feb. 5, 2021) (quoting *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998)).

In matters where the movant bears the burden of proof at trial, the party seeking summary judgment

> must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (emphasis added) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc)).

## III. DISCUSSION

### A. *Jurisdictional and Procedural Arguments in Defendant's Motion to Dismiss*

#### 1. Plaintiffs' failure to join federal and state parties

In his Motion to Dismiss, Defendant first contends that the Court should dismiss this case pursuant to Fed. R. Civ. P. 12(b)(7) because Plaintiffs failed to join an indispensable party under Fed. R. Civ. P. 19. (DE 129 at 3.) Defendant states that he "currently provides cooperation on immigration detainer requests only to the extent required by state law." (*Id.* at 4.) Accordingly, Defendant argues that "if this Court is to find that [he] is acting unconstitutionally, it must necessarily find that the statute governing [his] actions [,Fla. Stat. § 908.105,] is also unconstitutional." (*Id.*) Furthermore, Defendant contends that enjoining him from complying with immigration requests would create an inconsistent obligation on Defendant's part because SB 168 has "already been preliminarily upheld" in *City of South Miami*. (*Id.*) Defendant notes that Plaintiffs did not name the State of Florida or any Florida government official as a party to this case, (*id.*), nor did Plaintiffs seek to certify a constitutional challenge pursuant to Fed. R. Civ. P. 5.1(a). (*Id.* at 5.)

Defendant also asserts that since a federal governmental agency (*i.e.*, ICE) issues immigration detainers, Defendant's decision to honor such detainers "originate[s] from and center[s] on federal action by federal parties[] and [] require[s] a judicial determination as to the constitutionality of federal statutes and procedures, [such that] this case may not proceed without the presence of the appropriate federal officials." (*Id.* at 6.) Defendant claims that the Court's resolution of this case without a federal governmental agency or official as a named party could subject Miami-Dade County to liability for complying with federal law, prevent the County from cooperating with the federal government, and aggrieve the federal government by subjecting them to an adverse ruling without them being a party to this case or being served with a notice of constitutional challenge

pursuant to Fed. R. Civ. P. 5.1. (*Id.* at 7–8.)

Given that Plaintiffs have not named the United States or the State of Florida as parties in the Third Amended Complaint, Defendant asks that the Court "dismiss this matter without prejudice and grant Plaintiffs leave to include the proper, necessary parties in an amended complaint, or [] order that these required parties [are] joined in this matter under Fed. R. Civ. P. 19(a)(2)." (*Id.* at 8.) Alternatively, Defendant asks the Court to order Plaintiffs to "provide the required notice under Fed. R. Civ. P. 5.1 and certify to the appropriate attorney general that a statute has been questioned." (*Id.*)

In response, Plaintiffs argue that neither the United States nor the State of Florida are indispensable parties. Plaintiffs claim that the Third Amended Complaint does not challenge "any practices, decisions, or actions of [or by] the federal government in its enforcement of immigration law." (DE 130 at 13 (citations omitted).) First, Plaintiffs claim that the Court previously disposed of this issue in granting in part and denying in part the First Motion to Dismiss. (*Id.* (citing DE 38 at 47).) In the Order on First Motion to Dismiss, the Court stated in relevant part:

> The Court agrees with Plaintiffs that the federal government is not an indispensable party to this action. First, based on the allegations in the [First] [A]mended [C]omplaint, the Court can accord complete relief to the current Parties without additional litigants being joined. Plaintiffs challenge [Miami-Dade] County's policy of complying with voluntary requests from a federal agency as unconstitutional. Taking these allegations as true, it would not be necessary to join the federal government in order to rule on the constitutionality of the County's policy or whether the policy caused Plaintiffs' Fourth Amendment rights to be violated.
>
> Further, although the United States filed a statement of interest in this matter (DE 27), there is nothing in the record at this stage to suggest that the U.S. Government is "so situated that disposing of the action" in its absence would "impair or impede the [Government]'s ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). While the U.S.

Government may have a legitimate interest in carrying out immigration enforcement, it certainly does not have a legitimate interest in ensuring that the County does so. *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 874 (N.D. Ill. 2018) . . . . And the U.S. Government has no interest involving the County's allegedly unconstitutional policy because this policy pertains to a voluntary decision the County has made to honor ICE detainers. Finally, proceeding without the U.S. Government would not, as the County suggests, leave it subject to incurring inconsistent obligations because the County is not obliged to honor ICE detainer requests and has instead freely and deliberately chosen to do so.

(DE 38 at 47–48.)

Plaintiffs argue that Defendant "make[s] essentially the same argument again," despite the fact that the Third Amended Complaint narrows Plaintiffs' suit and "includes the same substantive injunctive relief that was requested in the first instance." (DE 130 at 13.) Plaintiffs state that "[t]he technical change of replacing [Miami-Dade] County as Defendant with Daniel Junior in his official capacity as Director of MDCR does not change this analysis." (*Id.*)

Second, Plaintiffs argue that their claims neither "originate from and center on federal action by federal parties" or "require a judicial determination as to the constitutionality of federal statutes and procedures," as Defendant claims. (*Id.*) Plaintiffs state that Defendant "has not entered into a written agreement with the federal government . . . [or] received training or deputization" from federal officials and therefore, he does not act under color of federal law in honoring ICE detainer requests.[8] (*Id.* (citing 8 U.S.C. § 1357(g)(1)).) Plaintiffs also reiterate that they "are not challenging the

---

[8] On February 26, 2025, current Miami-Dade County Mayor Danielle Levine Cava, finalized a Memorandum of Agreement ("***287(g) Agreement***") between MDCR and ICE, pursuant to 8 U.S.C. § 1357(g)(1). Memorandum of Agreement, Miami-Dade Cty. Corr. & Rehab. (Feb. 14, 2025), https://perma.cc/AG86-US2J. However, the Court is unaware of any of Defendant's officers or employees that have been trained, certified, or deputized pursuant to the 287(g) Agreement. The Court will address the implications of the 287(g) Agreement as relevant. *See infra* n. 13.

constitutionality of any federal statutes and procedures . . . . [but rather] Defendant's practice of complying with ICE detainers." (DE 130 at 14.) Plaintiffs argue that "[t]he issues raised in the [Third Amended Complaint] are based on Defendant's practice, not federal policy and practice." (*Id.* (citation omitted).)

Third, Plaintiffs contend that Defendant's "three pragmatic concerns . . . [do not] render the federal government an indispensable party." (*Id.*) Citing to cases across the nation, Plaintiffs argue that "Defendant is not acting under federal command [in deciding whether to honor ICE detainer requests and can choose to ignore detainer requests without fear of penalty or loss of federal funds." (*Id.*) Plaintiffs repeat their claim from the Third Amended Complaint that "Defendant did not comply with detainer requests from 2013 through 2017," suggesting that compliance was not mandatory. (*Id.* at 15 (citing DE 125 at ¶¶ 39–49).) Further, Plaintiffs disagree with Defendant that "a ruling for Plaintiffs would compromise cooperation between [Defendant] and the federal government, thereby implicating federal interests" and indicating that the federal government is an indispensable party in this case. (DE 130 at 15.) Plaintiffs claim that the federal government "has no legally cognizable interest requiring its presence," because federal law does not "require compliance with detainer requests" or "require cooperative written agreements between Defendant and the federal government." (*Id.* (citations omitted).) Finally, Plaintiffs contend that resolving the issues in this case will not require the Court to resolve matters regarding the general constitutionality of ICE detainer requests, because "[i]t is Defendant's decision to honor the requests that harms Plaintiffs and, therefore, full relief is available from Defendant without the federal government as a defendant." (*Id.* (citation omitted).)

Plaintiffs similarly argue that the State of Florida is not an indispensable party to this suit. After noting that adding the State of Florida as a party to this suit "would divest the Court of jurisdiction given Eleventh Amendment immunity," Plaintiffs reiterate that *Ex parte Young* permits them to "seek prospective injunctive relief against state officers for ongoing violations of federal law." (DE 130 at 16.) In response to Defendant's argument that Plaintiffs are effectively challenging the constitutionality of SB 168, Plaintiffs note that the Third Amended Complaint makes a single reference to SB 168 (observing that it was passed), contains no analysis of any particular provision, and instead "challenges the constitutionality of Defendant's practice of honoring ICE detainers without probable cause of a crime under color of state law." (*Id.* at 17.) Even if the constitutionality of a state statute were at issue, that would not, Plaintiffs contend, automatically make the state an indispensable party. (*Id.*) Finally, Plaintiffs argue that Fed. R. Civ. P. 5.1 is inapplicable because they do not ask the Court to assess the constitutionality of a state statute and because Defendant is being sued in his official capacity as an officer of the state. (*Id.* at 18.)

Rule 12(b)(7) of the Federal Rules of Civil Procedure states that a court should dismiss a case when the operative complaint "fail[s] to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 of the Federal Rules of Civil Procedure requires that, under certain circumstances, a person must be joined as a party in an action. Fed. R. Civ. P. 19(a). Specifically, a party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the

interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Id*. In order to determine whether this case must be dismissed, the Court must first apply Rule 19(a) to ascertain "whether the person in question is one who should be joined if feasible[,]" and, "[i]f the person would be joined but cannot be (because for, example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." *Becker Landscaping & Irrigation, Inc. v. EGI, Ltd.*, No. 08-14214-CIV, 2010 WL 11504517, at *1 (S.D. Fla. Jan. 21, 2010) (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003)).[9] In making this determination, "pragmatic concerns, especially the effect on the parties and the litigation, control." *Fla. Wildlife Fed'n Inc. v. United States Army Corps of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017) (quotation marks omitted) (citing *Focus on the Fam.*, 344 F.3d at 1280).

Plaintiffs are correct that, with regard to whether the United States is an indispensable party, Defendant makes essentially the same arguments in its Motion to Dismiss the Third Amended Complaint as it did in its First Motion to Dismiss. (*Compare* DE 23 at 19–20 *with* DE 129 at 6–8; *see also* DE 130 at 13.) Moreover, Defendant has

---

[9] Pursuant to federal law, "In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress . . . is drawn in question, the court shall certify such fact to the [U.S.] Attorney General, and shall permit the United States to intervene . . . ." 28 U.S.C. § 2403(a). Further, "In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence . . . and for argument on the question of constitutionality." *Id.* § 2403(b); *see also* Fed. R. Civ. P. 5.1(a) (providing more details about how district courts must proceed when a constitutional challenge to a federal or state statute is at issue in a civil matter).

not cited any additional authority that would change the Court's prior analysis. Furthermore, as Plaintiffs point out, the Third Amended Complaint "has narrowed Plaintiffs' suit and includes the same substantive injunctive relief that was requested in the first instance." The Court agrees that replacing the County as Defendant with Daniel Junior in his official capacity as Director of MDCR does not change its analysis. Accordingly, Defendant's motion provides the Court with no reason to depart from its prior ruling that the federal government is not an indispensable party to this proceeding pursuant to Rule 19.

The Court also agrees with Plaintiffs that the state government is not an indispensable party. As Plaintiff points out, Defendant does not argue that he is not a state officer who directs MDCR to honor ICE detainer requests (which would undermine the application of *Ex parte Young*), but instead contends that the state is indispensable. The *Ex parte Young* doctrine has "been described as a legal 'fiction' because it creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority, and, hence, without immunity protection, when they enforce state laws in derogation of the Constitution." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336–37 (11th Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114 n.25 (1984)). Here, Plaintiffs plead that the *Ex parte Young* exception applies to their claim, and Defendants do not challenge that position. Therefore, the "imaginary distinction" between the state government and its officers applies here, and the state is not a necessary party within the *Ex parte Young* framework.[10]

---

[10] Even if the Court were to find that the state was an indispensable party whose joinder was not feasible due to sovereign immunity, the *Ex parte Young* doctrine would permit Plaintiffs to name an officer of the state as defendant to cure the indispensability defect, and the matter could proceed, so long as the balance of the Rule 19(b) factors permitted

One of Defendant's core indispensability arguments appears to be that Plaintiffs are effectively challenging the constitutionality of SB 168. This is not the case. Plaintiffs are challenging the constitutionality of Defendant's practice of honoring ICE detainer requests. Even if it were the case, it would not necessarily make the state an indispensable party. *See, e.g., Norwood v. Harrison*, 581 F.2d 518, 519 (5th Cir. 1978) (concluding that the State of Mississippi was not an indispensable party to an action challenging the constitutionality of a state statue); *Sutton v. Leesburg*, No. 20-cv-00091, 2021 WL 1264244, at *8–9 (N.D. Ala. Apr. 6, 2021) (rejecting state's argument that it was a required party by virtue of plaintiff's constitutional challenge to state statute, and explaining, "state (and federal) statutes are frequently challenged as unconstitutional without the state (or federal) government as a named party") (quoting *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 359 (2d Cir. 2015) (alterations accepted)); *Lake Forest Elementary v. Orleans Par. Sch. Bd.,* No. 16-2323, 2016 WL 3080487, at *6 n.35 (E.D. La. June 1, 2016) ("[T]he State is not an indispensable party merely because the constitutionality of a state statute is challenged in a lawsuit.") (first quoting *Thornton v. Foti*, No. 87-CV-4265, 1988 WL 135164, at *2 (E.D. La. Dec. 12, 1988); then citing *Norwood*, 581 F.2d 518)).

Defendant's concern about facing inconsistent obligations should he be enjoined from honoring ICE detainer requests is unwarranted. *Cf. City of South Miami*, 408 F.

---

it. *See Salt River Project v. Lee*, 672 F.3d 1176, 1180–81 (9th Cir. 2012) (concluding tribal officials adequately represent the interests of the tribe in suit under *Ex parte Young* and that "a contrary holding would effectively gut the *Ex parte Young* doctrine."); *Nisqually Indian Tribe v. Gregoire*, No. 08-5069, 2008 WL 1999830, at *3–6 (W.D. Wash. May 8, 2008) (holding that although Squaxin Island Indian Tribe was an indispensable party, Plaintiff could instead name an official of the Tribe as a defendant pursuant to *Ex parte Young*).

Supp. 3d at 1296–1301 (holding that SB 168's detainer mandate was neither field preempted nor conflict preempted by the INA).[11] Finally, regardless of whether Plaintiffs are implicitly challenging the constitutionality of a state statute (SB 168), the Court will not be striking down a state statute as unconstitutional, so there is no need for Plaintiffs to provide Rule 5.1 notice. In short, the Court concludes that the action should proceed among the existing parties.

### 2. Subject matter jurisdiction under Section 242(g) of the INA

Defendant also argues in Defendant's MTD that the Court lacks subject matter jurisdiction pursuant to Section 242(g) of the INA, which states in relevant part:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

As Defendant acknowledges, Former Defendant Miami-Dade County "made this argument during briefing on an earlier version of Plaintiffs' complaint . . . [and] this Court rejected that argument." (DE 129 at 8 n.4.) The Court's Order on the First Motion to Dismiss determined that the Court has subject matter jurisdiction over Plaintiffs' claims, rejecting the then-Defendants' argument that Section 242 of the INA stripped the Court of jurisdiction over this case. (DE 38 at 9–14.) In the Motion to Dismiss, Defendant relies primarily on the same cases Former Defendant Miami-Dade County relied upon in its First

---

[11] If state law *were* somehow put into conflict with federal law because of the Court's ruling, the federal law would control under the Supremacy Clause. Nonetheless, as discussed *infra*, the Court will not be granting the relief that Plaintiffs request, so Defendant's concerns about inconsistent obligations will not be realized.

Motion to Dismiss. (DE 129 at 9 (first citing *Gupta v. McGahey*, 709 F.3d 1062 (11th Cir. 2013); then citing *Alvarez v. U.S. Immigr. and Customs Enf't*, 818 F.3d 1194 (11th Cir. 2016), *cert. denied sub nom. Alvarez v. Skinner*, 582 U.S. 930 (2017)).) The Court previously determined that *Gupta* and *Alvarez* are inapposite, as they both feature federal immigration officers' discretionary actions to commence removal proceedings under the INA, while here Plaintiffs challenge a local entity's policy to honor ICE detainers. (DE 38 at 12.)

In the instant Motion to Dismiss, Defendant does not articulate why the Court's analysis of these cases is in error nor provide any reason the Court should abandon its earlier ruling. Therefore, these cases remain unpersuasive. Defendant does cite one additional case, *Johnson v. Acting U.S. Att'y Gen.*, 847 F. App'x 801 (11th Cir. 2021), in his Motion. (DE 129 at 9.) However, *Johnson* is also inapposite, because the claims in *Johnson* arose from ICE's decision to commence a proceeding and execute a removal order against the plaintiff there. 847 F. App'x at 802. That is not the case here. Accordingly, the Court agrees with Plaintiffs that "Defendant's Motion provides this Court with no reason to depart from its prior ruling that the Court has subject matter jurisdiction to adjudicate Plaintiffs' claims" under Section 242 of the INA. (DE 130 at 11.)

### 3. Bar to general injunctive relief under Section 242(f) of the INA

Defendant next argues that Plaintiffs' request for general injunctive relief in the Third Amended Complaint is barred by Section 242(f) of the INA, which states in relevant part:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1232] other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f).

Defendant avers that "at least two statutory provisions applicable to immigration detainer enforcement [] fall under [S]ection 1252(f)'s jurisdictional bar." (DE 129 at 10.) First, 8 U.S.C. § 1226 states in relevant part, "On a warrant issued by the [U.S.] Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Second, 8 U.S.C. § 1231(a) "provides that the federal government may detain and remove aliens ordered removed." (DE 129 at 10.) Defendant notes that "for its responsibilities under both of these statutes, the federal government relies upon the cooperation provided under immigration detainers to assist in those tasks." (*Id.*) Defendant argues that "Plaintiffs' requested relief necessarily restrains the operation of 8 U.S.C. §§ 1226 and 1231 because, if granted, [Defendant] would be enjoined from generally cooperating at the request of the federal government to assist it in the apprehension and detention of aliens." (*Id.* at 11.) Therefore, because "the requested injunction would extend beyond 'the application of such provisions to an individual alien against whom proceedings under such part have been initiated,'" Defendant argues that the Court cannot grant Plaintiffs the relief they seek and that this case should be dismissed. (*Id.* (quoting 8 U.S.C. § 1252(f)).)

In response, Plaintiffs contend that 8 U.S.C. § 1252(f) "restricts certain types of injunctions against federal immigration authorities seeking to enforce immigration law," but it "does not limit injunctive relief related to a state official's arrest of a person based on an immigration detainer request." (DE 130 at 12.) Although 8 U.S.C. § 1252(f) bars a court from restraining the operation of the provisions of part IV of its subchapter (8 U.S.C. §§ 1221–32), Plaintiff contends that those provisions authorize federal authorities to

enforce immigration law but do not provide any authority to state or local officials. (*Id.*) Indeed, the provision that Defendant relies on to comply with immigration detainer requests—8 U.S.C. § 1357(g)—is not cited in 8 U.S.C. § 1252(f) or its relevant subchapters. (*Id.*) Plaintiffs argue that their requested relief—to enjoin Defendant from honoring immigration detainer requests—would not restrain the operation of any federal statute. (*Id.*) In particular, 8 U.S.C. § 1226 and 8 U.S.C. § 1231 govern immigration enforcement by federal authorities, not state actors, and in any case do not apply to immigration detainer requests. (*Id.*)

Since the Parties' briefing on Defendant's MTD, the Supreme Court has interpreted 8 U.S.C. § 1252(f)(1) to "generally prohibit[] lower courts from entering injunctions that order **federal** officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) (emphasis added). Here, however, Plaintiffs seek to enjoin Defendant Junior from honoring immigration detainer requests, and Defendant Junior is not a federal official. Consequently, if the Court were to grant Plaintiffs' requested relief, it would not order federal officials to "take or to refrain from taking" any action to carry out the statutory provisions within the ambit of 8 U.S.C. § 1252(f)(1). Moreover, as the Ninth Circuit has observed, "The written word of the INA is quite clear: none of the provisions that § 1252(f)(1) encompasses refers to immigration detainers." *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 815 (9th Cir. 2020). Specifically, 8 U.S.C. § 1226 governs the warrants needed by federal officials to make immigration arrests, and 8 U.S.C. § 1231(a) governs detention of noncitizens by federal officials and applies only to noncitizens who have already been ordered removed. Therefore, Plaintiffs' request for

relief in the Third Amended Complaint is not barred by Section 242(f) of the INA.

**B.** ***Jurisdictional and Procedural Arguments in Defendant's Motion for Summary Judgment***

In his Motion for Summary Judgment, Defendant argues that all Plaintiffs lack standing—in one way or another—to seek prospective injunctive relief in this case because the record fails to show that Plaintiffs face "a real and immediate threat of future injury." (DE 137 at 19–21.) Defendant also argues that Plaintiffs WeCount!, Inc. and FLIC are barred from seeking the instant relief based on impermissible claim splitting. (*Id.* at 17–19.) The Court finds these arguments unpersuasive.

**1.  Standing**

Defendant argues that C.F.C. and S.C.C. lack standing because Plaintiffs exclusively seek injunctive relief and C.F.C. and S.C.C. do not have a real and immediate threat of future injury. *See Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1283–84 (11th Cir. 2001) ("[T]o have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future. . . . 'Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.'" (quoting *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir.1994))).

Indeed, "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)) (internal quotations omitted). The mootness doctrine is subject to certain exceptions, however. The Supreme

Court has recognized "an exception to the general rule [of mootness] in cases that are 'capable of repetition, yet evading review.'" *Murphy*, 455 U.S. at 482 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Plaintiffs argue that this exception applies here. To establish standing based on this doctrine, a plaintiff must show that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (citation omitted); *see also Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1324 n.6 (11th Cir. 2001) (same).

Defendant does not dispute that Plaintiffs have established the first element of this exception but argues that Plaintiffs fail to establish the second element. The Court finds that there is a reasonable expectation that Plaintiffs could once again be placed into the custody of MDCR and be subject to an ICE detainer request. As Plaintiffs point out, and as the facts in this case establish, an individual can be placed into MDCR custody on suspicion of a wide range of criminal charges, such as driving without a license or disorderly intoxication. Furthermore, it is undisputed that C.F.C. and S.C.C. have lived in the United States as noncitizens. The Court therefore finds that Plaintiffs' claim is "capable of repetition, yet evading review" such that C.F.C. and S.C.C. do not lack standing on this basis.[12] *See e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (describing challenges to criminal pretrial detentions as "distinctly 'capable of repetition, yet evading review'"); *Lynch v. Baxley*, 744 F.2d 1452, 1456–57 (11th Cir. 1984)

---

[12] Defendant also argues that all Plaintiffs "face difficulty" in establishing standing based on the Biden Administration's immigration enforcement priorities. (DE 137 at 20.) The Court need not address this argument, given that former President Biden's immigration enforcement priorities have been supplanted by the current administration's policies.

(challenge to Alabama statute authorizing detention pending involuntary commitment proceedings was not moot due to plaintiff's release, because his claims were "capable of repetition, yet evading review") (internal quotations omitted).[13]

### 2. Claim Splitting

Defendant next argues that Plaintiffs WeCount! and FLIC have already sought to

---

[13] Plaintiffs' Fourth Amendment claim is premised on the fact that MDCR detains individuals on suspicion of civil immigration violations in the absence of a 287(g) agreement. *See e.g.*, (DE 134 at 1 (arguing the individual Plaintiffs' "seizure[s] w[ere] unreasonable and unjustified because: (a) the MDCR does not have the appropriate authority to carry out arrests based solely on immigration violations, which is a function reserved for federal officials or local officials *only* in specific limited circumstances under the [INA], none of which apply here; and (b) the MDCR had no probable cause of a state law crime to make a warrantless arrest at the time they detained [the individual Plaintiffs]"); *id.* at 2–3 (arguing that "[s]ection 287(g) of the INA, or 8 U.S.C. § 1357(g), allows local law enforcement officers to perform immigration enforcement functions pursuant to a written agreement with the Attorney General" after receiving training and under DHS supervision, but that "Miami-Dade County does not have an executed INA 287(g) agreement in place with the federal government")). However, as previously noted, MDCR is now party to the 287(g) Agreement. *See supra* n.8.

Given that Plaintiffs request injunctive relief, this change raises the question of whether the 287(g) Agreement defeats Plaintiffs' standing. *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020) (dismissing claim for injunctive relief as moot because defendant rescinded the allegedly unlawful policy). The Parties have not requested that the Court accept supplemental briefing nor filed any motions related to the signing of the 287(g) Agreement. However, "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (citations omitted).

The Court concludes that the mere signing of the 287(g) Agreement does not render Plaintiffs' claim moot. This is because the 287(g) Agreement does not specify any officers or employees who have already been trained and certified to act as Federal immigration officers but contemplates "screen[ing] and nominat[ing] candidates for ICE training and approval" in the future. 287(g) Agreement at 2. It is not the signing of the agreement, but the training and certification of officers, which allows those officers to perform the functions of federal immigration officers. 8 U.S.C. § 1357(g)(2) (specifying that any 287(g) agreement must "require that an officer or employee of a State or political subdivision of a State performing a function under the agreement shall have knowledge of, and adhere to, Federal law relating to the function" and must "contain a written certification that the officers or employees performing the function under the agreement have received adequate training regarding the enforcement of relevant Federal immigration laws"); *see*

enjoin the enforcement of SB 168 and have been denied that relief in *City of South Miami v. DeSantis*, 19-cv-22927 (S.D. Fla. 2019). Defendant contends that in bringing the instant case, WeCount! and FLIC, who were also among the group of plaintiffs in *City of South Miami*, are effectively attempting to break up their claim piecemeal and "litigate[] it piece by piece in different courts." (DE 137 at 18.). According to Defendant, this would amount to impermissible splitting of duplicative claims, and WeCount! and FLIC should therefore be barred from bringing their Fourth Amendment claim in this case.

      To determine whether duplicative claim-splitting has occurred, "courts borrow from the doctrine of claim preclusion and permit the later-filed suit to be dismissed if it 1) involves the same parties or their privies; and 2) arises out of the same transaction or series of transactions as the first suit." *Greene v. H & R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010). At the outset, the Court notes that this case was filed before *City of South Miami*, so Defendant's claim splitting argument would have been more appropriately raised in the *City of South Miami* litigation. Nevertheless, the *City of South Miami* litigation involved a group of ten plaintiffs who sued Florida's Governor and Attorney General. Therefore, there is minimal overlap of plaintiffs and no overlap of defendants in the two cases. Defendant reiterates the contention that Plaintiffs are bringing a facial challenge to the detainer mandate of SB 168—like the plaintiffs in *City of*

---

*also Santos v. Frederick Cty. Bd. of Com'rs*, 725 F.3d 451, 457, 465 (4th Cir. 2013) (holding that, despite the sheriff's office having entered into a 287(g) agreement with ICE, the defendant deputies had not been "trained or authorized to participate in immigration enforcement," so "lacked authority to enforce civil immigration law and violated [the plaintiff's] rights under the Fourth Amendment when they seized her solely on the basis of the outstanding civil ICE warrant"). Without evidence suggesting MDCR's policy of non-deputized officers honoring ICE detainers has been wholly replaced by the activities of deputized MDCR officers, Plaintiffs' claims are not moot.

*South Miami*—to establish that the two cases arise out of the same transaction. (DE 137 at 19.) As already discussed, however, Plaintiffs are not challenging the constitutionality of SB 168. Plaintiffs are instead challenging the constitutionality of Defendant's practice of honoring ICE detainer requests, which was not at issue in *City of South Miami*. Consequently, Defendant's claim splitting argument fails.

Finding that Defendant's jurisdictional and procedural arguments in both his Motion to Dismiss and his Motion for Summary Judgment are unavailing, the Court proceeds to evaluate the merits of Plaintiffs' claim.

### C. *Fourth Amendment inquiry*[14]

The briefings on Defendant's Motion to Dismiss (DE 129)[15] and the Parties' Cross-Motions for Summary Judgment (DE 134; DE 137) reflect Plaintiffs' belief that their ability to prevail on their Fourth Amendment claim depends on a two-step argument. First, Plaintiffs contend that Defendant and MDCR are not authorized to detain individuals for immigration violations pursuant to the INA, including the provision at 8 U.S.C. § 1357(g)(10). Specifically, Plaintiffs claim that in honoring ICE detainer requests, Defendant exceeds the cooperation by state or local officials with the federal government contemplated by the INA, absent those officials' training and certification to enforce

---

[14] This subsection addresses the merits arguments in Defendant's Motion to Dismiss (DE 129) and the Parties' Cross-Motions for Summary Judgment (DE 134; DE 137).

[15] The Court understands Defendant's argument in his Motion to Dismiss that, for an immigration detainer, the Fourth Amendment is satisfied when there is probable cause that a subject is removable. The Court denies Defendant's Motion to Dismiss on that basis because in order to rule on the merits, it must consider facts that lie outside of the pleadings and that are more appropriately addressed at summary judgment, such as the extent of Defendant's cooperation with ICE with respect to detainer requests (DE 136 ¶¶ 36–45) and the characteristics and components of the immigration detainer system currently in place (DE 136 ¶¶ 1–9, 32–35).

federal immigration law pursuant to a 287(g) agreement. Second, without this authority, Plaintiff contends that Defendant cannot hold an arrestee pursuant to an ICE detainer request based on probable cause of removability. Instead, Plaintiffs argue, Defendant must establish probable cause of a state law crime to avoid violation of the Fourth Amendment. In light of legal and factual developments that have occurred since the Parties' briefing on Defendant's First Motion to Dismiss (DE 23), Plaintiffs' argument must ultimately fail.

First, over the last several years since this Court's Order on First Motion to Dismiss, multiple courts, including in *City of South Miami*, have "conclude[d] that honoring federal immigration detainer requests [within the § 908.105 scheme] falls within the scope of cooperation contemplated by Congress under § 1357(g)(10)(B)." 408 F. Supp. 3d at 1300; *City of S. Miami v. DeSantis*, 424 F. Supp. 3d 1309, 1330 (S.D. Fla. 2019), *vacated and remanded on other grounds sub nom. City of S. Miami v. Governor*, 65 F.4th 631 (11th Cir. 2023) ("the conduct [that Fla. Stat. § 908.105] authorizes falls within the scope of 'cooperat[ion] . . . in the . . . detention . . . of aliens not lawfully present in the United States.'") (quoting 8 U.S.C. § 1357(g)(10)(B)); *City of El Cenizo*, 890 F.3d at 179–80 (upholding a Texas law's requirement that local officers comply with detainer requests as a permissible form of cooperation under § 1357(g)(10)). In *City of El Cenizo*, the Fifth Circuit rejected the argument that allowing compliance with detainer requests under § 1357(g)(10) renders 287(g) agreements contemplated by § 1357(g)(1) superfluous, explaining that under 287(g) agreements, "state and local officials become de facto immigration officers, competent to act on their own initiative," while cooperation under § 1357(g)(10) "permit[s] no unilateral enforcement." 890 F.3d at 180; *see also Rios v.*

*Jenkins*, 390 F. Supp. 3d 714, 725–26 (W.D. Va. 2019) (interpreting *Arizona v. United States,* 567 U.S. 387, 410 (2012) as precluding unilateral arrests for civil immigration offenses under § 1357(g)(10), but suggesting those pursuant to an ICE detainer and administrative warrant fall within § 1357(g)(10) cooperation). The Court finds these cases govern the analysis here.

Next, the Court concludes that the appropriate Fourth Amendment inquiry in this case is whether probable cause exists that an individual present in the United States is subject to removal—not whether probable cause exists as to the commission of a state law crime. The Fourth Amendment protects an individual's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. In this case, Plaintiffs argue in part that Defendant's honoring of federal immigration detainer requests violates the Fourth Amendment because he lacks probable cause that a state law crime has been committed. Plaintiffs state, "When a jailer extends a detainee's confinement pursuant to an ICE detainer, after the individual is otherwise entitled to release, the detainee is subject to a 'prolonged warrantless, post-arrest, pre-arraignment custody.'" (DE 134 at 12 (quoting *Miranda-Olivares v. Clackamas Cnty.*, No. 12-CV-02317, 2014 WL 1414305, at *9 (D. Or. Apr. 11, 2014)); *see also* DE 124 ¶ 5 ("[H]onoring ICE detainer requests violates an individual's Fourth Amendment rights" because these requests are not "supported by probable cause that an individual has committed a state law crime . . . .").)

In response, Defendant asserts that this "is not the proper Fourth Amendment analysis." (DE 129 at 13.) Defendant notes that "every appellate court that has analyzed what form of probable cause is required for an immigration hold has held that the Fourth Amendment is satisfied when there is probable cause that a subject is removable" (DE

129 at 13), citing to cases in the Fifth and Ninth Circuits and to the Eleventh Circuit's decision in *Alcocer I*. (*Id.* at 13–14 (citing *Alcocer I*, 906 F.3d at 953; *City of El Cenizo*, 890 F.3d at 188; *Gonzalez*, 975 F.3d at 817–20).) Defendant is correct.

In *Alcocer I*, the Eleventh Circuit explained that the issue of whether the plaintiff stated a viable Section 1983 claim pursuant to the Fourth Amendment turned on whether the jailer could "show they had probable cause . . . to believe that [the plaintiff] was illegally present in the United States." 906 F.3d at 953. On remand, in *Alcocer II*, the Eleventh Circuit reiterated the standard it set forth previously: that beyond a *Terry* stop, "the detention of a suspected alien must be based on consent or probable cause that the person is, in fact, an alien." 800 F. App'x at 865 (internal quotations omitted).

Further buttressing the standard set forth in *Alcocer*, the Eleventh Circuit has held that "[t]he Fourth Amendment does not require warrants to be based on probable cause of a crime, as opposed to a civil offense" and that "nothing in the original public meaning of 'probable cause' or 'Warrants' excludes civil offenses." *United States v. Phillips*, 834 F.3d 1176, 1181 (11th Cir. 2016).

Other circuit courts have agreed with the Eleventh Circuit. In the context of ICE immigration detainer requests, the Ninth Circuit analyzed the adequacy of probable cause determinations by state officials based on whether there was sufficient evidence to establish probable cause of removability and cited approvingly to *Alcocer*. *Gonzalez*, 975 F.3d at 817–20 ("[T]he Supreme Court long ago held that, beyond a *Terry* stop, any detention of a suspected alien must be based on consent or probable cause that the person is, in fact, an alien.") (quoting *Alcocer I*, 906 F.3d at 953) (internal quotations omitted). Likewise, while rejecting a facial Fourth Amendment challenge to Texas's ICE-

detainer compliance mandate, the Fifth Circuit held that "it is undisputed that federal immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability." *City of El Cenizo*, 890 F.3d at 187 (emphasis omitted). The court rejected plaintiffs' argument that this standard did not apply to state and local officers carrying out federal detention requests. *Id.* at 188.

Finding that the appropriate Fourth Amendment inquiry in this case is whether there is probable cause that Plaintiffs are removable, the Court next evaluates whether, as a pre-enforcement matter, detainer requests honored by Defendant provide the requisite probable cause of removability. The Court concludes that they do.

As discussed earlier in this Order, on February 17, 2017, the Board of County Commissioners passed Resolution No. R-163-17, which directed the Mayor or Mayor's designee to ensure that, related to immigration detainer requests, Miami-Dade County is honoring the federal government's request to detain individuals for 48 hours who are otherwise eligible for release based on a federal immigration official's averment that there is probable cause that the individual is removable under federal immigration law. (DE 128 ¶ 5.) On May 2, 2019, the Florida Legislature passed SB 168, which requires a law enforcement agency with custody of a person subject to an immigration detainer issued by a federal immigration agency to comply with requests made in immigration detainers that meet the criteria set forth in Fla. Stat. § 908.102(2)(a)–(c). (*Id.* ¶ 6.) On June 2, 2021, the Board of County Commissioners passed Resolution No. R-573-21, which (1) "recognize[d] that the provisions of Resolution No. R-163-17 relating to cooperation with immigration detainer requests [had] been superseded by [SB 168]," and (2) "amend[ed] Resolution No. R-163-17 to direct the County Mayor or County Mayor's designee to

ensure that, related to immigration detainer requests, Miami-Dade County is cooperating with the federal government to the extent required by state and federal law." (*Id.* ¶ 7.)

As a result of these developments, the detainer requests honored by Defendant must comply with federal law and the requirements set forth in SB 168. Plaintiffs do not dispute that "every immigration detainer that Miami-Dade County complies with must include" the components required by SB 168. (DE 136 ¶ 43; *see* DE 139 ¶ 43 ("Undisputed.")) Pursuant to SB 168, an immigration detainer request is deemed sufficient if: (a) "[t]he federal immigration agency's official form [*i.e.*, Form I-247] is complete and indicates on its face that the federal immigration official has probable cause to believe that the person to be detained is a removable alien under federal immigration law"; or (b) "[t]he federal immigration agency's official form is incomplete and fails to indicate on its face that the federal immigration official has probable cause to believe that the person to be detained is a removable alien under federal immigration law, but is supported by an affidavit, order, or other official documentation that indicates that the federal immigration agency has probable cause to believe that the person to be detained is a removable alien under federal immigration law"; and, in either case, (c) "[t]he federal immigration agency supplies with its detention request a Form I-200 Warrant for Arrest of Alien or a Form I-205 Warrant of Removal/Deportation or a successor warrant or other warrant authorized by federal law." Fla. Stat. § 908.201(2)(a)–(c).

The immigration detainer, Form I-247A, requires an authorized ICE official to state that "DHS has determined that probable cause exists that the subject is a removable alien" and note the official's particularized basis for making that determination. (Sample Form I-247A, DE 136-1.) Moreover, current ICE policy requires that "ICE immigration

officers must establish probable cause to believe that the subject is an alien who is removable from the United States before issuing a detainer with a federal, state, local, or tribal [law enforcement agency]." (ICE Policy No. 10074.2, DE 136-3 at 2.) Thus, "[a]n ICE immigration officer may not issue a detainer based upon the initiation of an investigation to determine whether the subject is a removable alien." (ICE Policy No. 10074.2, DE 136-3 at 2.)

Additionally, under current ICE policy regarding the investigation of potential U.S. citizenship of individuals encountered by ICE, "An ICE officer, agent or attorney must assess the potential U.S. Citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship or, even in the absence of such a claim, when indicia of potential U.S. citizenship are present in a case." (ICE Policy No. 16001.2, DE 136-2 at 4.) "In any case in which there is uncertainty about whether the evidence is probative of U.S. citizenship, ICE should not detain, arrest, or lodge an immigration detainer against the individual and should cancel any immigration detainer already lodged by ICE." (ICE Policy No. 16001.2, DE 136-2 at 6–7.)[16]

In this case, Plaintiffs do not dispute that the ICE immigration detainer requests honored by Defendant are supported by probable cause of removability. The record reflects that Defendant's policy is to comply with ICE immigration detainer request only when there is probable cause to believe that the subject of the detainer request is removable, thus satisfying the Fourth Amendment. This is because Defendant must

---

[16] As the Court noted earlier, in *City of South Miami*, Judge Bloom analyzed the Fourth Amendment implications of ICE detainer requests that comply with the requirements of SB 168, concluding that "[t]he combination of the detainer and administrative warrant rectify many of the" concerns raised by "the body of case law across the nation that [had] determined that . . . immigration detainer holds are unconstitutional subsequent arrests . . . ." 408 F. Supp. 3d at 1280, 1298–99; *see also supra* pp. 6–7.

ensure that the immigration detainer request is facially sufficient as defined by Fla. Stat. § 908.102(2)(a)–(c) before it complies with the request. Indeed, the undisputed facts in this case reflect that the detainer holds of Plaintiffs C.F.C. and S.C.C. met these requirements. "Plaintiffs C.F.C. and S.C.C. were detained pursuant to immigration detainers that were (a) complete and indicated on their face that the federal immigration official had probable cause to believe that C.F.C. and S.C.C. were removable under federal immigration law and (b) accompanied by a Form I-200 Warrant for Arrest of Alien or a Form I-205 Warrant of Removal/Deportation." (DE 136 ¶ 48; *see* DE 139 at ¶ 48 ("Undisputed.").)[17] The Court therefore concludes that the immigration detainer requests honored by Defendant are supported by the requisite probable cause. Accordingly, Plaintiffs' Fourth Amendment rights have not been violated, and Plaintiffs have no remedy pursuant to *Ex parte Young*.

## IV.    CONCLUSION

For the reasons set forth above and at the April 10, 2025 Status Conference (DE 259), it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Dismiss the Third Amended Complaint (DE 129) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (DE 137) is **GRANTED**.

3.  Plaintiffs' Motion for Summary Judgment (DE 134) is **DENIED**.

---

[17] The Court's ruling today does not foreclose post-enforcement Fourth Amendment challenges to specific detentions based on ICE detainer requests. *See e.g., Brown v. Ramsay*, No. 18-cv-10279 (S.D. Fla. May. 30, 2025), ECF 241 (granting summary judgment in favor of plaintiff's Fourth Amendment claim and stating that "the Court is not ordering that [defendant sheriff] cannot comply with ICE detainers and warrants. Instead, the Court's holding today is simply that, when [defendant] possesses information indicating that [a detained individual] is a U.S. citizen, [defendant] cannot abdicate its legal responsibility and turn a blind eye to this information.").

4. Plaintiffs' Motion for Attorneys' Fees (DE 211) is **GRANTED IN PART.** The Motion is granted as to Plaintiffs' claims that Defendant breached Section 1.1 of the Parties' Partial Settlement Agreement (DE 119-1) between July 2022 and April 2024. The Court previously found that Defendants breached Section 1.5 of the Partial Settlement Agreement. (DE 237 at 2.) Plaintiffs are awarded reasonable attorneys' fees and costs incurred to enforce the Partial Settlement Agreement between April 10, 2023, and April 11, 2024, totaling **$354,289**, for which let execution issue.[18]

5. This case is **DISMISSED WITH PREJUDICE**.

6. The Clerk of Court is directed to **CLOSE** this case.

7. All other pending motions are **DENIED AS MOOT**.

---

[18] The Court's order on fees and costs follows extensive briefing, *see* (DE 208; DE 213; DE 215; DE 218; DE 233; DE 239; DE 247), nine hearings, *see* (DE 163; DE 173; DE 179; DE 182; DE 202; DE 228; DE 232; DE 242; DE 259), and reporting by appointed Special Master Magistrate Judge Chris McAliley, *see* (DE 237; DE 243; DE 252; DE 254), regarding Former Defendant Miami-Dade County's breaches of the Partial Settlement Agreement and Plaintiffs' efforts to coerce compliance. Plaintiffs have met their burden of establishing entitlement to the award, providing extensive evidence of Former Defendant's breaches and detailed time sheets documenting their costs of enforcing compliance. Plaintiffs' time sheets show a reasonable use of time and reasonable hourly rates, varying by the experience level and role of the person expending time. (DE 208; DE 233); *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) (listing customary fee, time and labor required, and skill requisite to perform the legal service provided as among the factors determining a reasonable hourly). The award's limit to costs incurred between July 2022 and April 2024 represents the Court's best effort to identify Plaintiffs' costs of enforcing compliance, given the impracticality of scouring the over one-thousand line items for applicability. *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (holding that a district court may apply an across-the-board reduction, where fee documentation is voluminous and an hour-by-hour review is simply impractical and a waste of judicial resources, so long as the court provides a clear and concise explanation for the reason for the reduction). The Court provided its full factual and legal basis for its determination at the April 10, 2025 Status Conference. (DE 259.)

8.  Any deadlines, hearings, and/or trial settings are **CANCELED**.

9.  The Court will separately issue a final judgment.

**DONE AND ORDERED** in Chambers in Miami, Florida on this <u>18th</u> day of July, 2025.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE